GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
(973) 360-7900
(973) 301-8410 (fax)
Philip R. Sellinger
Todd L. Schleifstein

Attorneys for Defendants
Cellco Partnership d/b/a Verizon Wireless,
Ryan Broomes, Jorge Velez,
Anthony Fiocco, and Bruno Pavlicek

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN TOUCH CONCEPTS, INC., d/b/a ZCOM,<br><br>Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, *et al.*,<br><br>Defendants. | 12 Civ. 542 (PGS) (TJB) |

---

**BRIEF OF DEFENDANTS CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, RYAN BROOMES, JORGE VELEZ, ANTHONY FIOCCO, AND BRUNO PAVLICEK IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS.........................................................................................4

ARGUMENT...........................................................................................................7

POINT I    ZCOM'S CONTRACT-BASED CLAIMS IN COUNTS IX, X AND XI SHOULD
BE DISMISSED BECAUSE VERIZON WIRELESS HAD AN UNAMBIGUOUS
RIGHT TO TERMINATE ZCOM WITHOUT CAUSE UNDER THE AGENT
AGREEMENT..........................................................................................7

POINT II   THE TORTIOUS INTERFERENCE CLAIM IN COUNT I SHOULD BE
DISMISSED BECAUSE IT FAILS TO ALLEGE THAT ANY THIRD PARTY
RELATIONSHIP TERMINATED AS THE RESULT OF ANY ALLEGED
WRONGFUL ACTS .................................................................................11

POINT III  COUNTS IV AND V FAIL TO STATE A CLAIM FOR TORTIOUS
INTERFERENCE BECAUSE ALL OF THE ALLEGATIONS ARISE FROM
VERIZON WIRELESS'S EXERCISE OF ITS CONTRACT RIGHTS .................14

    A.   Counts IV And V Are Barred Because Verizon Wireless
Exercised Its Contractual Rights To Reject New Locations
And Proposed Sales of Existing Locations.......................................14

    B.   Counts IV And V Are Also Barred By The Economic Loss
Doctrine Because They Flow Directly From The Agent
Agreement ....................................................................................15

POINT IV   COUNTS II AND III FAIL TO STATE A CLAIM FOR FRAUD BECAUSE
ZCOM DID NOT REASONABLY RELY ON ANY ALLEGED
MISSTATEMENTS AND HAS NO STANDING TO ASSERT CLAIMS BASED
ON ALLEGED FALSE STATEMENTS MADE TO ITS SUB-AGENTS.............16

POINT V    COUNT VI FAILS TO STATE A CLAIM FOR DEFAMATION BECAUSE
VERIZON WIRELESS AND ITS EMPLOYEES DID NOT PUBLISH ANY
OF THE ALLEGEDLY DEFAMATORY STATEMENTS...................................18

POINT VI   THE REMAINDER OF ZCOM'S CONTRACT-BASED THEORIES DO
NOT STATE A CLAIM FOR RELIEF ...................................................20

    A.   ZCom Cannot Maintain Its Claim In Count VIII For Breach
Of Contract Because The Claim Is Based Solely Upon The

Non-Occurrence Of An Alleged Condition Precedent ......................................20

B.   ZCom's Unjust Enrichment Claim Is Barred By The
Agent Agreement ................................................................................21

C.   New York Law And The Agent Agreement Preclude ZCom
From Recovering Punitive Damages Under Its Breach Of
Contract Claims .................................................................................22

CONCLUSION ..................................................................................................23

## TABLE OF AUTHORITIES

### Federal Cases

*10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.,* 634 F.3d 112 (2d Cir. 2011)...........9

*Apex Oil Co. v. Belcher Co. of N.Y., Inc.,* 855 F.2d 997 (2d Cir. 1988) .......................................17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)...............................................................................3, 13

*Bank Midwest, N.A. v. Hypo Real Estate Cap. Corp.,* 2010 WL 4449366
   (S.D.N.Y. Oct. 13, 2010).........................................................................................21

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)..................................................................3, 13

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573
   (2d Cir. 2006) ...................................................................................................21

*Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP,* 623 F. Supp. 2d 504 (S.D.N.Y. 2009).......16

*See Cellco P'ship v. In Touch Concepts, Inc.,* 11 Civ. 6493 (PGS) (TJB), slip op. (DE 41)
   (D.N.J. May 29, 2012) .........................................................................................20

*Clamyer Int'l, Inc. v. Shurtape Techs., Inc.,* 1999 WL 1225253  (S.D.N.Y. Dec. 21, 1999)..........8

*Cohen v. Telsey,* 2009 WL 3747059 (D.N.J. Nov. 2, 2009).........................................................16

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.,* 650 F. Supp. 2d 314
   (S.D.N.Y. 2009).....................................................................................................9

*Duquense Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604 (3d Cir. 1995) ..............................15

*Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784 (2d Cir. 1986) .......................22

*Gallerstein v. Berkshire Life Ins. Co. of Am.,* 2006 WL 2594862  (D.N.J. Sept. 11, 2006) ...........6

*Glenz v. RCI, LLC,* 2010 WL 323327 (D.N.J. Jan. 20, 2010) .....................................................15

*Green v. Beer,* 2007 WL 576089  (S.D.N.Y. Feb. 22, 2007) ........................................................6

*Hatalmud v. Spellings,* 505 F.3d 139 (2d Cir. 2007)...................................................................7

*Henneberry v. Sumitomo Corp. of Am.,* 415 F. Supp. 2d 423 (S.D.N.Y. 2006)............................18

*Herbert v. Newton Mem'l Hosp.,* 933 F. Supp. 1222 (D.N.J. 1996), *aff'd,* 116 F.3d 468 (3d Cir. 1997) ................................................................................................... 13, 15

*Int'l Klafter Co. v. Continental Cas. Co.,* 869 F.2d 96 (2d Cir. 1989) ....................... 2, 8

*Joe Hand Promotions, Inc. v. Mills,* 567 F. Supp. 2d 719 (D.N.J. 2008) ..................... 17

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.,* 595 F.3d 458 (2d Cir. 2010) ............. 9

*Lightning Lube , Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir. 1993) ............................... 12

*Marks v. Struble,* 347 F. Supp. 2d 136 (D.N.J. 2004) .................................................. 6

*McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750 (3d Cir. 1990) ....................... 21

*Metromedia Energy, Inc, v. Griffin,* 2011 WL 4343801 (D.N.J. Sept. 13, 2011) ....... 12

*Mortellite v. Novartis Crop Prot., Inc.,* 460 F.3d 483 (3d Cir. 2006) ........................ 17

*Novartis Pharm. Corp. v. Bausch & Lomb, Inc.,* 2008 WL 4911868 (D.N.J. Nov. 13, 2008) ....... 6

*Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.,* 485 F. Supp. 2d 387 (S.D.N.Y. 2007) ............................................................... 12

*Palestri v. Monogram Models, Inc.,* 875 F.2d 66 (3d Cir. 1989) ................................ 18

*Petrello v. White,* 412 F. Supp. 2d 215 (E.D.N.Y. 2006), *aff'd,* 344 Fed. Appx. 651 (2d Cir. 2009) .......................................................................................................... 17

*Pryor v. NCAA,* 288 F.3d 548 (3d Cir. 2002) ............................................................ 7

*Pub. Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.,* 722 F. Supp. 184 (D.N.J. 1989) .......... 15

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.,* 754 F. Supp. 2d 616 (S.D.N.Y. 2010) ............... 10

*Rosen v. Spanierman,* 894 F.2d 28 (2d Cir. 1990) .................................................... 17

*Rosenberg v. Metlife, Inc.,* 453 F.3d 122 (2d Cir. 2006) ........................................... 18

*Schuster v. Dragone Classic Motor Cars, Inc.,* 98 F. Supp. 2d 441 (S.D.N.Y. 2000) ............ 11

*Seghers v. Morgan Stanley DW, Inc.,* 2007 WL 1404434 (S.D.N.Y. May 10, 2007) ............ 17

*Sevel Argentina, S.A. v. General Motors Corp.,* 46 F. Supp. 2d 261 (S.D.N.Y. 1999) ........... 22

*Sharma v. Skaarup Ship Mgmt. Corp.,* 916 F.2d 820 (2d Cir. 1990) ......................... 12

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,* 164 F.3d 186 (3d Cir. 1988) ................................18

*Varrallo v. Hammond Inc.,* 94 F.3d 842 (3d Cir. 1996) ................................................................14

*Village On Canon v. Bankers Trust Co.,* 920 F. Supp. 520 (S.D.N.Y. 1996) .................................9

*White Plains Coat & Apron Co. v. Cintas Corp.,* 460 F.3d 281 (2d Cir. 2006)............................14

## State Cases

*DiLacio v. N.Y. City Dist. Council of United Bhd. of Carpenters & Joiners of Am.,*
914 N.Y.S.2d 309 (N.Y. App. Div. 2011)........................................................................19

*Kings Park Classroom Teachers Ass'n v. Kings Park Cent. Sch. Dist.,* 474 N.Y.S.2d 816
(N.Y. App. Div. 1984)..........................................................................................................8

*Lemmon v. United Waste Sys. Inc.,* 958 S.W.2d 493 (Tex. App. 1997)...........................................8

*Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.,* 463 N.Y.S.2d 960,
(N.Y. App. Div. 1983), *aff'd,* 460 N.E. 2d 1077 (N.Y. 1984) ......................................20

*Rocci v. Ecole Secondaire Macdonald-Cartier,* 165 N.J. 149 (2000)...........................................19

*Senisch v. Carlino,* 423 N.J. Super. 269 (App. Div. 2011) ...........................................................19

*Swinton v. Safir,* 720 N.E.2d 89 (N.Y. 1999) ...............................................................................18

*Triffin v. Automatic Data Processing, Inc.,* 394 N.J. Super. 237 (App. Div. 2007).....................17

*Wieder v. Chem. Bank,* 608 N.Y.S.2d 195 (N.Y. App. Div. 1994) ...............................................19

*Wood v. Laughlin,* 477 N.Y.S.2d 905 (N.Y. App. Div. 1984) .......................................................20

*Wilmington Trust Co. v. Strauss,* 2006 WL 3076611 (N.Y. Sup. Ct. Oct. 30, 2006), *aff'd,*
N.Y.S. 2d 21 (N.Y. App. Div. 2007) ..........................................................................12, 14

## Other Authorities

Josh Kosman, *Suit:  Verizon Inflated Numbers,* N.Y. Post, Nov. 29, 2011 ...................................19

Defendants Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), Ryan Broomes, Jorge Velez, Anthony Fiocco, and Bruno Pavlicek respectfully submit this brief in support of their motion for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the First Amended Complaint ("Complaint" or "Amended Complaint") of Plaintiff In Touch Concepts, Inc., d/b/a ZCom ("ZCom") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

ZCom brings this action against Verizon Wireless and four of its current employees (who are named personally) to retaliate against and put pressure on Verizon Wireless through its employees for Verizon Wireless's ***without cause*** termination of its agency relationship with ZCom. Paragraph 8.8 of the parties' agency agreement expressly and unambiguously gave Verizon Wireless "the right to terminate this Agreement at any time, with or without cause, upon six (6) months prior written notice to Agent." On July 26, 2011, Verizon Wireless wrote to ZCom, citing paragraph 8.8 of the agreement and making clear that "this letter constitutes Verizon Wireless's without cause notice of termination of its agency relationship with ZCom . . . effective . . . January 31, 2012."

In retaliation for Verizon Wireless's without cause termination, ZCom filed an 862-paragraph, 11-claim Complaint alleging that Defendants engaged in a massive, coordinated scheme designed to drive ZCom out of business. Notwithstanding its length, verbosity and stridency, the Complaint fails to state a single viable claim for relief against Verizon Wireless or its current employees.

Instead, ZCom asserts two contract-based claims alleging that Verizon Wireless breached the parties' agreement by terminating ZCom without cause. Both claims fail because Verizon Wireless acted pursuant to the express terms of an admittedly complete, clear and unambiguous

contract provision granting it the right to terminate ZCom without cause on six months' notice. As the Second Circuit Court of Appeals made clear in *Int'l Klafter Co. v. Continental Cas. Co.*, 869 F.2d 96 (2d Cir. 1989), under New York law (which governs the parties' agreement and relationship), such without cause termination provisions in commercial agency agreements are to be construed exactly as they are written. New York law has likewise long recognized that courts may not rewrite contracts that turn out not to be to the liking of one of the parties.

ZCom also invokes the implied covenant of good faith and fair dealing to challenge Verizon Wireless's without cause termination. This argument likewise fails, as the implied covenant cannot be used to eliminate or alter express contract rights. Similarly non-viable is ZCom's request for a declaratory judgment seeking to void an express provision in the parties' agreement that waives the implied covenant of good faith and fair dealing. Waivers of contract rights are generally enforceable, and Verizon Wireless and its employees are aware of no authority prohibiting a waiver of the implied covenant under New York law.

Apparently realizing that it has no viable claim for breach of contract or of the implied covenant of good faith and fair dealing, ZCom attempts to concoct a series of additional tort claims: three for tortious interference, two for fraud and one for defamation. All of these claims are unsupported by existing law, and many of them fail in light of the above without cause termination provision or other similarly unambiguous provisions in the parties' agreement.

ZCom's tortious interference claims arise from (1) Defendants' alleged interference with ZCom's contracts with its sub-agents, (2) Verizon Wireless's alleged refusal to allow ZCom to open additional stores, and (3) Verizon Wireless's alleged refusal to allow ZCom to sell its entire business to other Verizon Wireless agents after ZCom had been notified of its termination. The first claim cannot stand because ZCom concedes that Verizon Wireless's contractually permitted

2

without cause termination of ZCom resulted in the termination of ZCom's relationships with all of its sub-agents. ZCom also fails to identify a single provision of any specific sub-agent agreement that was allegedly breached, as required by the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The second two claims are not viable because Verizon Wireless had an express contractual right to approve or reject the opening or sale of ZCom locations. Alternatively, both claims are barred by the economic loss doctrine because the only damages alleged by ZCom are purely monetary, and they all flow directly from rights and duties arising under the parties' agency agreement.

The remaining tort claims also do not state a claim for relief. ZCom's fraud claims arise from a scheme allegedly hatched by Defendants and carried out through misrepresentations and omissions to ZCom's sub-agents. But ZCom steadfastly denies having relied upon any allegedly false statements or omissions made by Defendants. Rather, it claims to have uncovered the alleged scheme through its own efforts and not participated in any way. Nor does ZCom have standing to assert fraud claims on behalf of its sub-agents. ZCom also asserts a defamation claim against Verizon Wireless based on certain statements made only in the notice of termination. Those statements are not actionable, however, because the notice was not published to any third party by Verizon Wireless.

In the absence of any viable contract or tort claims, ZCom adds two other make-weight claims and an associated prayer for punitive damages. The first claim alleges that Verizon Wireless breached the parties' agreement by bringing a declaratory judgment action to confirm its contractual right to terminate ZCom without cause. ZCom alleges that this suit is barred by Verizon Wireless's alleged failure to provide certain pre-suit notice to ZCom, which ZCom characterizes as a condition precedent to suit. But the simple non-occurrence of a condition

3

precedent does not give rise to a claim for breach of contract, and ZCom has not suffered any damages as a result of any such "breach." ZCom also asserts a separate claim for unjust enrichment. Such a quasi-contractual claim cannot stand where, as here, both parties agree that they are bound by an enforceable written contract. Finally, ZCom may not recover punitive damages under any of its contract-based theories, as such damages are unavailable in a contract action and are also barred by the parties' agreement.

## STATEMENT OF FACTS

Verizon Wireless is a wireless communications service provider headquartered in Basking Ridge, New Jersey. It sells wireless service, handsets and accessories, both directly and indirectly, through stores that it owns and operates and through third-party agents and retailers. Complaint ¶¶ 38, 41. Messrs. Broomes, Velez, Fiocco, and Pavlicek are Verizon Wireless employees. *Id.* ¶¶ 69, 77, 85, 94.

Pursuant to an October 7, 2008 Agent Agreement ("Agent Agreement"), governed by New York law, Verizon Wireless authorized ZCom to sell Verizon Wireless service itself and through sub-agents. *Id.* ¶ 237, Ex. 4 (Agent Agreement) at ¶¶ 2.1, 10.1. ZCom directly operated approximately 30 stores and contracted with numerous sub-agents to operate another approximately 120 stores, for a total of approximately 150 stores. *Id.* ¶¶ 230, 443, Ex. 4 at ¶ 2.7.[1]

---

[1] The Agent Agreement made clear that Verizon Wireless owed no duties of exclusivity to ZCom, and that Verizon Wireless could sell wireless services on its own or through other agents in any of the areas in which ZCom or its sub-agents operated. Complaint Ex. 4 at ¶ 2.3.1. The Agreement similarly gave Verizon Wireless absolute discretion to approve or reject ZCom's request to open or acquire any new locations or to add new sub-agents, and to approve or reject requests by other Verizon Wireless agents to assume ZCom's duties under the Agreement by purchasing ZCom stores. *Id.* Ex. 4 at ¶¶ 2.4.2, 2.7, 10.8. In paragraph 10.2 of the Agreement, the parties also agreed to waive any implied duties, including those of good faith and fair dealing. *Id.* Ex. 4 at ¶ 10.2.

Paragraph 8.8 of the Agent Agreement expressly provides that Verizon Wireless "has the right to terminate this Agreement *at any time, with or without cause*, upon six (6) months prior written notice to Agent." *Id.* ¶ 404; Ex. 4 at ¶ 8.8.  Verizon Wireless exercised that right by letter dated July 26, 2011, in which it notified ZCom that, pursuant to paragraph 8.8, "this letter constitutes without cause notice of termination of its agency relationship with ZCom . . . effective . . . January 31, 2012." *Id.* ¶ 404, Ex. 5 at 1.[2]  On November 4, 2011, Verizon Wireless brought an action in this Court for a declaratory judgment that its termination of ZCom was proper.

In retaliation, on December 28, 2011, ZCom filed a Complaint against Verizon Wireless, Verizon Wireless employees Messrs. Broomes, Velez, Fiocco, and Pavlicek, and many other parties -- including Verizon Wireless's partners and indirect parents, the former and current CEOs of one of those companies and Verizon Wireless, the Presidents of Verizon Wireless's Northeast Area and New York Metro Region, and an in-house attorney -- as well as several other current and former employees (collectively, the "Original Verizon Defendants").[3]  On March 26, 2012, many of the Original Verizon Defendants served ZCom with a proposed sanctions motion, pursuant to Fed. R. Civ. P. 11(c)(2)'s "safe harbor" provision.  In response to the proposed

---

[2]   Although Verizon Wireless opted to terminate ZCom without cause and provided a full six months' notice, it had ample justification to terminate ZCom immediately under a different provision in the Agreement for fraud and misconduct.  Complaint Ex. 4 at ¶ 8.4.  Verizon Wireless detailed ZCom's wrongdoing in the notice of termination, *id.* Ex. 5 at 1-2, but did not publish this information elsewhere.  ZCom does not allege otherwise.

[3]   The Complaint was initially filed in New York state court, but was removed to the U.S. District Court for the Southern District of New York and later transferred to this Court. Complaint ¶¶ 473-74.

motion, ZCom agreed to narrow its action by dismissing the moving parties.[4]  ZCom also agreed

to strike a number of over-reaching and fanciful allegations, including claims of an alleged

collective effort to defraud various federal government agencies, "Wall Street" and investors,

and an alleged conspiracy between Verizon Wireless and its competitors to restrain trade.

    ZCom served and filed the current version of the Complaint on May 5, 2012.  ZCom's

Amended Complaint asserts claims for tortious interference (Counts I, IV and V), fraud (Counts

II and III), defamation (Count VI), unjust enrichment (Count VII), breach of contract (Counts

VIII, IX and X), and for declaratory relief voiding paragraph 10.2 of the Agent Agreement

(Count XI).[5]

---

[4]  The moving Original Verizon Defendants were (1) Verizon Wireless's two indirect parent
companies, Verizon Communications Inc. ("VCI") and Vodafone Group plc, (2) Ivan G.
Seidenberg and Lowell C. McAdam (the former and current CEOs, respectively, of VCI),
(3) Daniel S. Mead (CEO of Verizon Wireless), (4) Nancy Clark (President of Verizon
Wireless's Northeast Area), (5) Patrick Devlin (President of Verizon Wireless's New York
Metro Region), and (6) Kenneth Kayal (Counsel in the Legal Department of Verizon Wireless's
Northeast Area).  Although no longer Defendants, the Complaint continues to include allegations
regarding each of these persons and entities in a section titled "Non-parties of interest."  *See*
Complaint ¶¶ 127-86.

[5]  There is no need for the Court to engage in a choice of law analysis with respect to any of the
claims in the Complaint.  New York law applies to both "the interpretation and enforcement of
[the Agent] Agreement," as well as to "all matters arising out of or relating to it."  Complaint Ex.
4 at ¶ 10.1.  New York law thus applies not only to ZCom's breach of contract and unjust
enrichment claims, which "sound[] not in tort, but in quasi contract," *Green v. Beer*, 2007 WL
576089 *6 n.14 (S.D.N.Y. Feb. 22, 2007), but to ZCom's tort claims as well.  In any event, no
conflict exists between New York and New Jersey law as to the relevant elements of any of those
tort claims.  *See Novartis Pharm. Corp. v. Bausch & Lomb, Inc.*, 2008 WL 4911868 *4 (D.N.J.
Nov. 13, 2008) (tortious interference with prospective economic relations and defamation);
*Gallerstein v. Berkshire Life Ins. Co. of Am.*, 2006 WL 2594862 *5 (D.N.J. Sept. 11, 2006)
(common law fraud); *Marks v. Struble*, 347 F. Supp. 2d 136, 142 (D.N.J. 2004) (tortious
interference with existing contract).

## ARGUMENT

## POINT I

### ZCOM'S CONTRACT-BASED CLAIMS IN COUNTS IX, X AND XI SHOULD BE DISMISSED BECAUSE VERIZON WIRELESS HAD AN UNAMBIGUOUS RIGHT TO TERMINATE ZCOM WITHOUT CAUSE UNDER THE AGENT AGREEMENT

It is undisputed that paragraph 8.8 of the Agent Agreement grants Verizon Wireless the absolute right to terminate its agency relationship with ZCom without cause upon the provision of six months' written notice, and that Verizon Wireless complied with the terms of this provision to the letter. Accordingly, Counts IX and X, which allege that Verizon Wireless breached the Agreement and the implied covenant of good faith and fair dealing in terminating ZCom without cause, are legally insufficient and should be dismissed with prejudice.

Under New York law, "if an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007) (internal citation omitted).[6] The Agent Agreement contains an express provision authorizing Verizon Wireless "to terminate this Agreement at any time, with or without cause, upon six (6) months prior written notice to Agent." Statement of Facts ("SOF"), *supra*. ZCom has never maintained that there is anything incomplete, unclear or ambiguous about this provision. It similarly admits that Verizon Wireless complied strictly with the conditions for a without cause termination, insofar as Verizon Wireless provided the contractually-required six months' written notice. *Id.*

Nor can there be any question that such without cause termination provisions are enforceable in commercial agency agreements. In *Int'l Klafter,* the Second Circuit Court of

---

[6] Because the Agent Agreement is an Exhibit to the Complaint, the Court may consider its substantive terms and provisions in ruling on a motion to dismiss. *Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2002).

Appeals made abundantly clear that such provisions mean exactly what they say, and must be construed literally. In that case, an insurance company terminated insurance agents pursuant to a provision in the parties' agency agreements that permitted the carrier to terminate an agent on 30 days' prior notice "for any cause." *Int'l Klafter*, 869 F.2d at 97. Plaintiffs nonetheless brought suit for breach of contract, alleging that they had been wrongfully terminated and claiming that, under "an unwritten policy," an agent's satisfactory performance nullified the carrier's right to terminate the agent for "any cause." *Id.* at 99.

The district court dismissed plaintiffs' claims on summary judgment, and the Second Circuit affirmed, holding that "the words 'any cause' do not admit of any interpretation other than the meaning of the words themselves: termination is permitted for any reason at all." *Id.* at 99. *See also Clamyer Int'l, Inc. v. Shurtape Techs., Inc.,* 1999 WL 1225253 *2 (S.D.N.Y. Dec. 21, 1999) (dismissing claim for breach of distribution agreement based on improper termination; claim was barred by unambiguous provision in agreement permitting termination on 90 days' written notice); *Lemmon v. United Waste Sys. Inc.,* 958 S.W.2d 493, 500-01 (Tex. App. 1997) (relying upon *Int'l Klafter* in affirming dismissal of claim for breach of employment agreement governed by New York law; provision permitting termination of employee "for any other reason" should be enforced as written, and court need not resolve factual dispute as to whether termination was with or without cause); *Kings Park Classroom Teachers Ass'n v. Kings Park Cent. Sch. Dist.,* 474 N.Y.S.2d 816, 818 (N.Y. App. Div. 1984) (arbitrator improperly relied upon teacher evaluations in granting relief to terminated teacher where collective bargaining agreement allowed school district to terminate teacher upon 30 days' notice).

As in each of the above cases, ZCom cannot look to this Court to imply an obligation at odds with express contract terms. Whenever a contract is reasonably susceptible of only one

meaning -- which ZCom has never contested with respect to paragraph 8.8 of the Agent Agreement -- a court is prohibited from altering the contract "to reflect its personal notions of fairness and equity." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (internal citation omitted).  Count IX should therefore be dismissed with prejudice.

ZCom alternatively relies on the implied covenant of good faith and fair dealing, but that also cannot support a claim for breach of the Agent Agreement.  ZCom attempts to use the implied covenant both to read paragraph 8.8 entirely out of the Agreement, and to replace it with a new contractual right conditioning Verizon Wireless's ability to end the parties' relationship by exercising its termination decision only in a manner that ZCom deems to be "fair" or "in good faith."  Complaint ¶¶ 830-44.

This position should be rejected, as the implied covenant cannot undo Verizon Wireless's express contractual right to terminate ZCom without cause upon six months' notice.  Under New York law, courts may not invoke the implied covenant of good faith and fair dealing as a basis for adding terms to or excising provisions from contracts or implying additional obligations that the parties have neglected to specifically include in a written contract.  *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125 (2d Cir. 2011); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (implied covenant "cannot be used to impose obligations that were not explicitly part of the agreement, or to create, in essence, new, affirmative duties . . . that were not expressly set forth in the contract") (citations omitted); *Village On Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 534 (S.D.N.Y. 1996) ("The implied covenant, however, does not create any new contractual rights, nor does it provide an independent basis for recovery.").

Indeed, using the implied covenant in the manner sought by ZCom would be tantamount to requiring Verizon Wireless to remain in business with an agent in perpetuity, regardless of whether Verizon Wireless believes that the agent is undermining its name and brand, or has made a simple business decision that its interests are best served by severing its relationship with the agent.[7]  It would also undercut one of the major purposes of a without cause termination right -- to avoid arguments and disputes about whether Verizon Wireless had demonstrated a sufficient reason to end such an agent relationship.  Because paragraph 8.8 of the Agent Agreement could not be clearer that Verizon Wireless has an absolute right to terminate ZCom without cause upon proper notice, the implied covenant cannot be used to contradict or modify this express contractual provision.

Ignoring the express language of paragraph 8.8 would likewise run afoul of a cardinal rule of contract interpretation, which forbids courts from construing agreements in a manner that would render specific contract language to be meaningless or nugatory.  *See Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010) (Under New York law, "parties are not free to interpret a contract in a way that . . . makes any provision of the contract meaningless").  This Court thus cannot simply pretend, as urged by ZCom, that the phrase "terminate this Agreement at any time, with or without cause" had no meaning to the parties.

Finally, the Agent Agreement waived the implied covenant of good faith and fair dealing in paragraph 10.2.  That provision, titled "No Implied Duties," expressly provides that "[i]t is understood and agreed that this Agreement is not subject to any implied duties of good faith or fair dealing."  Complaint Ex. 4 at ¶ 10.2.  Verizon Wireless is unaware of any authority that

---

[7] For the same reason, the Agent Agreement also makes clear that "[n]either party has any right or expectation of renewal of this Agreement beyond the Term or any month-to-month term of operation, and either party may decide in its sole discretion not to renew this Agreement." Complaint Ex. 4 at ¶ 8.

refused to give effect to such a waiver under New York law.  To the contrary, broad contractual

waivers of rights are generally enforceable under New York law.  *See, e.g., Schuster v. Dragone

Classic Motor Cars, Inc.*, 98 F. Supp. 2d 441, 447 (S.D.N.Y. 2000) (enforcing clause waiving

defenses to contract enforcement, including fraud, failure of consideration, negligence, and

failure to perform conditions precedent).

Count X should therefore be dismissed with prejudice, as should Count XI, which seeks a

declaration voiding the parties' waiver of the implied covenant.

## POINT II

### THE TORTIOUS INTERFERENCE CLAIM IN COUNT I SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE THAT ANY THIRD PARTY RELATIONSHIP TERMINATED AS THE  RESULT OF ANY ALLEGED WRONGFUL ACTS

ZCom alleges in Count I that Verizon Wireless and Messrs. Broomes and Velez

interfered with ZCom's agreements with its sub-agents.  ZCom asserts generally that, at some

point in late 2009 or 2010, various Verizon Wireless employees communicated directly with

certain unidentified ZCom sub-agents, induced those sub-agents to participate in an alleged

"prepaid activation fraud scheme," and that such participation put all of those sub-agents in

breach of their respective contracts with ZCom.  Complaint ¶¶ 496-560.  While difficult to

discern from ZCom's vague, convoluted pleading of Count I, it appears to allege that Verizon

Wireless is liable for tortious interference because Verizon Wireless terminated ZCom pursuant

to the same alleged scheme, and as a result of ZCom's termination, all of ZCom's sub-agent

agreements terminated as well.

To state a claim for tortious interference plaintiff "must allege an injury that is more

concrete than lost business of unknown customers"; plaintiff must instead identify the specific

contracts that have been breached and customers that have been lost as the "but for" result of

defendant's actions, rather than set forth "a recital of the necessary elements of . . . a [tortious interference] claim supported by mere conclusory statements." *Metromedia Energy, Inc, v. Griffin*, 2011 WL 4343801 *4 (D.N.J. Sept. 13, 2011) (Bongiovanni, *M.J.*) (internal citations omitted).  As noted by the *Metromedia Energy* court, plaintiff must demonstrate that defendant's wrongful acts were the "but for" cause of the alleged breach of contract with the third party. *Lightning Lube , Inc. v. Witco Corp.*, 4 F.3d 1153, 1168 (3d Cir. 1993) (New Jersey law); *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (New York law).  Most importantly, plaintiff must point to specific relationships that terminated *as a result of defendant's allegedly improper conduct.  Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 398 (S.D.N.Y. 2007).

ZCom did not and cannot plead that its relationship with any particular sub-agent terminated as a but-for result of any of Verizon Wireless's alleged wrongful acts.  To the contrary, ZCom alleges that once Verizon Wireless terminated its Agent Agreement, its sub-agents' authority to sell wireless services and accessories terminated as well.  Complaint ¶¶ 406-07, 437.  But Verizon Wireless was contractually authorized to terminate the Agent Agreement without cause upon providing six months' written notice.  SOF.  A defendant cannot be liable for tortious interference where it has merely exercised its own contractual rights.  *See Wilmington Trust Co. v. Strauss*, 2006 WL 3076611 *11 (N.Y. Sup. Ct. Oct. 30, 2006) (dismissing tortious interference claim by personal guarantor of loans to Burger King franchisee arising from creditors' diversion of funds intended to be used by franchisee to pay royalties to Burger King; creditors had right under loan agreements to divert funds to pay prior existing debts instead), *aff'd*, 847 N.Y.S.2d 21 (N.Y. App. Div. 2007).  Stated differently, an act is not "wrongful" for purposes of tortious interference liability if it is "done in the exercise of an equal or superior

right," *Herbert v. Newton Mem'l Hosp.*, 933 F. Supp. 1222, 1230 (D.N.J. 1996), *aff'd*, 116 F.3d 468 (3d Cir. 1997), such as a contract right.

Moreover, Count I does not state a plausible claim for relief because it does not adequately plead several additional elements of tortious interference. Specifically, ZCom does not allege (a) which particular sub-agents violated their agreements with ZCom, (b) what specific provisions of those agreements were breached, or (c) precisely how the conduct alleged in Count I constituted a breach of those provisions.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide the "grounds" of his or her "entitle[ment] to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, Fed. R. Civ. P. 8(a) requires that factual allegations create at least "plausible" grounds for a claim. *Twombly*, 550 U.S. at 556. In *Iqbal*, the Supreme Court held that pure legal conclusions are not accepted as true on a motion to dismiss. *Iqbal*, 556 U.S. at 678. Instead, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The omission of any specific facts as to (a) particular sub-agents who violated their agreements with ZCom, (b) specific sub-agent agreement provisions that were breached, and (c) how any alleged wrongful conduct actually breached any agreement, is fatal to Count I. As pleaded, this claim is premised only on the sort of generalized, conclusory statements that run afoul of the standards articulated in *Twombly* and *Iqbal*.

## POINT III

### COUNTS IV AND V FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE BECAUSE ALL OF THE ALLEGATIONS ARISE FROM VERIZON WIRELESS'S EXERCISE OF ITS CONTRACT RIGHTS

**A. Counts IV And V Are Barred Because Verizon Wireless Exercised Its Contractual Rights To Reject New Locations And Proposed Sales Of Existing Locations.**

Counts IV and V allege that Verizon Wireless injured ZCom by, respectively, "freezing out" ZCom's growth in refusing to approve its requests to open additional locations, and later, by "freezing in" most of its current locations in refusing to approve their post-termination sale to a Verizon Wireless agent, United Telecom, Inc., and two other, unidentified Verizon Wireless agents. Complaint ¶¶ 341-46, 356-62, 438-57, 649-85, 687-707. The processes by which ZCom may request, and Verizon Wireless may, in its discretion, approve the opening of new ZCom stores, the addition of new sub-agents and sub-agent stores, or the sale of existing stores to other agents, are all expressly addressed in specific provisions of the Agreement. *Id.* Ex. 4 at ¶¶ 2.4.2, 2.7, 10.8.

A critical element of a claim for tortious interference is that the defendant acted either solely out of malice (i.e., without justification or excuse), or employed fraudulent or illegal means. *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 286 (2d Cir. 2006); *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 n.10 (3d Cir. 1996). As discussed in Point II above, a defendant cannot be liable for tortious interference where it has merely exercised its own contractual rights. *See Wilmington Trust*, 2006 WL 3076611 at *11 (dismissing tortious interference claim by personal guarantor of loans to Burger King franchisee arising from creditors' diversion of funds intended to be used by franchisee to pay royalties to Burger King; creditors had right under loan agreements to divert funds to pay prior existing debts instead);

*Herbert*, 933 F. Supp. at 1230.  Verizon Wireless was not required to approve either every requested new ZCom location, every new sub-agent with whom ZCom wished to contract or every sale of an existing location that ZCom proposed.  To the contrary, all of these transactions were subject to Verizon Wireless's approval at its discretion.  Complaint Ex. 4 at ¶¶ 2.4.2, 2.7, 10.8.  Verizon Wireless's exercise of its discretion in declining specific requests by ZCom to open or sell corporate or sub-agent-operated stores therefore does not and cannot constitute the sort of improper conduct that gives rises to tortious interference liability.

**B.   Counts IV And V Are Also Barred By The Economic Loss**
**Doctrine Because They Flow Directly From The Agent Agreement.**

The economic loss doctrine "prohibits . . . plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquense Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995).  Thus, "[o]nly tort claims that are extraneous to an agreement, e.g., fraud in the inducement, remain viable against the economic loss doctrine." *Glenz v. RCI, LLC*, 2010 WL 323327 *5 (D.N.J. Jan. 20, 2010) (Sheridan, *J.*) (dismissing breach of fiduciary duty claim under economic loss doctrine "because it flows directly from the parties' contract").  In other words, "when a plaintiff alleges that a defendant's improper performance of a contract resulted in merely economic losses . . . the economic loss doctrine bars a tort recovery and leaves the plaintiff to his contractual remedies." *Pub. Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989).

As discussed in Point III(A) above, Counts IV and V flow directly from the parties' rights under the Agent Agreement, which specifically addressed the processes for ZCom requests to add locations, sign on new sub-agents, and sell existing locations to other Verizon Wireless agents.  Complaint Ex. 4 at ¶¶ 2.4.2, 2.7, 10.8.  If anything, claims arising out of Verizon

Wireless's exercise of its discretion in considering such requests are for breach of contract -- not for tortious interference -- and are therefore barred by the economic loss doctrine.

## POINT IV

### COUNTS II AND III FAIL TO STATE CLAIMS FOR FRAUD BECAUSE ZCOM DID NOT REASONABLY RELY ON ANY ALLEGED MISSTATEMENTS AND HAS NO STANDING TO ASSERT CLAIMS BASED ON ALLEGED FALSE STATEMENTS MADE TO ITS SUB-AGENTS

Counts II and III both assert claims for common law fraud. Count II is based on alleged misrepresentations as to various aspects of an alleged (and highly convoluted) prepaid activation scheme detailed in the Complaint. Count III is premised on alleged omissions that defendants were perpetrating a fraud on ZCom and its sub-agents through the same alleged scheme, or that ZCom sub-agents would not get paid for certain sales of Verizon Wireless services. Neither claim is viable, however, because ZCom insists repeatedly in its Complaint that it cannot satisfy the essential element of reasonable reliance on anything Verizon Wireless or its employees said or neglected to say. Knowing that it cannot demonstrate such reliance on its own, ZCom instead attempts to plead the alleged reliance of unnamed members of its sub-agent network. That cannot save ZCom's fraud claims, however, because ZCom lacks standing to assert those claims on behalf of third parties.

Fraud claims require the plaintiff's reasonable reliance on the defendant's material misrepresentation or omission of a presently existing or past fact. *Cohen v. Telsey*, 2009 WL 3747059 *12 (D.N.J. Nov. 2, 2009); *Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F. Supp. 2d 504, 510 (S.D.N.Y. 2009). ZCom makes clear that it did not rely -- reasonably or otherwise -- on any alleged misstatement or omission of fact by Verizon Wireless or its employees. To the contrary, ZCom states that it (a) "internally detected," through its own investigation, suspicious prepaid activations being made by its sub-agents; (b) urged Verizon

16

Wireless to look into the matter; and (c) launched its own "comprehensive anti-prepaid fraud program." Complaint ¶¶ 327, 337-39, 523-27.   ZCom further alleges that it "did not willfully or voluntarily participate in the VZW Defendants' scheme" described in the Complaint. *Id.* ¶¶ 312, 522.

The reasonable reliance element cannot be satisfied where the alleged victim of the fraud claims to have always known the subject representations to be false, *Apex Oil Co. v. Belcher Co. of N.Y., Inc.*, 855 F.2d 997, 1008-09 (2d Cir. 1988); *Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 728 (D.N.J. 2008), or to have undertaken its own investigation of the facts. *Petrello v. White*, 412 F. Supp. 2d 215, 228 (E.D.N.Y. 2006), *aff'd*, 344 Fed. Appx. 651 (2d Cir. 2009); *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237, 249 (App. Div. 2007). ZCom thus could not have relied to its detriment on anything that Verizon Wireless or its employees said (or neglected to say) about prepaid activations in light of ZCom's own alleged knowledge, gleaned after its own internal investigation.

ZCom's two fraud claims are also not viable to the extent that they are premised on Verizon Wireless's communications with ZCom's sub-agents, rather than with ZCom itself.  The reasonable reliance element cannot be satisfied where, as here, allegedly false statements were made to persons other than plaintiff. *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492-93 (3d Cir. 2006); *Rosen v. Spanierman*, 894 F.2d 28, 33-34 (2d Cir. 1990).  ZCom thus lacks standing to assert fraud claims on behalf of its sub-agents, which it maintains are "independent" of ZCom.  Complaint ¶¶ 35, 542. *See Seghers v. Morgan Stanley DW, Inc.*, 2007 WL 1404434 *6 n.5 (S.D.N.Y. May 10, 2007) (plaintiff lacked standing to assert fraud claims based on misrepresentations made to third parties; "It is axiomatic that a party must 'assert his own legal

rights and interest, and cannot rest his claim to relief on the legal rights or interest of third

parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

<div align="center">

**POINT V**

**COUNT VI FAILS TO STATE A CLAIM FOR DEFAMATION
BECAUSE VERIZON WIRELESS AND ITS EMPLOYEES DID NOT
<u>PUBLISH ANY OF THE ALLEGEDLY DEFAMATORY STATEMENTS</u>**

</div>

Although styled as a claim for "injurious falsehood," Count VI is essentially a claim for

defamation.[8]  ZCom alleges that it was defamed by the July 26, 2011 termination notice, as that

letter alternatively set forth several grounds upon which Verizon Wireless could have premised a

"for cause" termination of ZCom if it so wished.  Complaint ¶¶ 727-30, 732-37.  ZCom's

defamation claim should be dismissed for failure to allege publication of the supposedly

defamatory statements.

The elements of a claim of defamation are:  (a) a written defamatory factual statement

concerning plaintiff; (b) publication to a third party; (c) fault (either negligence or actual malice,

depending upon plaintiff's status); and (d) the falsity of the statement.  *Rosenberg v. Metlife, Inc.*,

453 F.3d 122, 123 n.1 (2d Cir. 2006); *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d

186, 189 (3d Cir. 1988).[9]

The publication requirement mandates some dissemination of the allegedly defamatory

statements to others.  *Palestri v. Monogram Models, Inc.*, 875 F.2d 66, 69 n.2 (3d Cir. 1989);

*Swinton v. Safir*, 720 N.E.2d 89, 93 (N.Y. 1999).  The requirement cannot be satisfied as a matter

---

[8]  A claim for injurious falsehood differs from a defamation claim, in that the former concerns derogatory statements directed to the ***quality*** of the goods or services offered for sale by plaintiff, whereas the latter concerns derogatory statements made ***about*** plaintiff or its business.  *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006).  Since Verizon Wireless and its co-defendants are obviously not being accused of denigrating the quality of Verizon Wireless services, the claim pleaded in Count VI is one for defamation.

[9]  New York law also requires a showing of either special damages or *per se* actionability. *Rosenberg*, 453 F.3d at 123 n.1.

<div align="center">18</div>

of law where the alleged defamatory statements are set forth only in a private letter sent to

plaintiff. *See DiLacio v. N.Y. City Dist. Council of United Bhd. of Carpenters & Joiners of Am.*,

914 N.Y.S.2d 309, 310 (N.Y. App. Div. 2011) (reversing denial of motion to dismiss defamation

claim; defamatory statements consisted solely of use of phrase "severe dereliction of duty" in

termination letter sent to worker). *Cf. Senisch v. Carlino*, 423 N.J. Super. 269, 277 (App. Div.

2011) (affirming dismissal of defamation claim due to lack of publication; defamatory statements

were made only in letter sent to plaintiff's agent).

The Complaint does not allege publication by Verizon Wireless or its employees of any

defamatory statements about ZCom. Instead, by ZCom's admission, the alleged defamatory

statements appear only in a single place -- the termination notice. That document is a private

letter that Verizon Wireless sent to ZCom. Complaint Ex. 5.

To the contrary, the only party to have published the contents of the letter by repeating

them elsewhere is ZCom, which has exhibited the letter to its Complaint and included it in

multiple sets of motion papers filed in this and other courts.[10] This self-inflicted wound does not

give rise to a claim for defamation. *See Rocci v. Ecole Secondaire Macdonald-Cartier*, 165 N.J.

149, 158 (2000) ("Although we do not diminish the sense of embarrassment asserted by plaintiff,

plaintiff should not be able to recover for that embarrassment when she herself caused the

material to be distributed."); *Wieder v. Chem. Bank*, 608 N.Y.S.2d 195, 196 (N.Y. App. Div.

1994) (plaintiff who self-publishes allegedly defamatory statements about grounds for his

---

[10] In addition, even before ZCom brought this action, its counsel disclosed some of the alleged defamatory statements set forth in the notice of termination to a reporter for the <u>New York Post</u>. Those statements subsequently appeared in an article in the newspaper regarding an unrelated litigation between ZCom and two of its sub-agents, for which ZCom sought to blame Verizon Wireless. Josh Kosman, *Suit: Verizon Inflated Numbers*, N.Y. Post, Nov. 29, 2011, at 31.

termination has no claim for defamation, even if he was later "compelled" to do so in applying for a new job).

<div style="text-align:center">

**POINT VI**

**THE REMAINDER OF ZCOM'S CONTRACT-BASED
THEORIES DO NOT STATE A CLAIM FOR RELIEF**

</div>

**A.  ZCom Cannot Maintain Its Claim In Count VIII For
Breach Of Contract Because The Claim Is Based Solely
Upon The Non-Occurrence Of An Alleged Condition Precedent.**

Count VIII alleges that Verizon Wireless breached the Agent Agreement in commencing the declaratory judgment action because Verizon Wireless allegedly did not provide ZCom with written pre-suit notice and an opportunity to negotiate, as ZCom contends is required by Section 14 of the Agreement.  Complaint ¶¶ 762-845.  This claim is likewise without merit.

While careful to avoid using these words in its Complaint, ZCom characterized the dispute resolution provisions of Section 14 of the Agent Agreement as a "condition precedent" in its unsuccessful motion to dismiss the declaratory judgment action.  ZCom contended that Verizon Wireless could not maintain that suit, which seeks judicial enforcement of Verizon Wireless's contractual right to terminate ZCom without cause, specifically because this "condition" had allegedly not occurred.  *See Cellco P'ship v. In Touch Concepts, Inc.*, 11 Civ. 6493 (PGS) (TJB), slip op. (DE 41) at 1-2 (D.N.J. May 29, 2012).

New York courts have long held that the mere non-occurrence of a contractual condition precedent does not, by itself, give rise to a claim for breach of contract.  *See, e.g., Wood v. Laughlin*, 477 N.Y.S.2d 905, 906 (N.Y. App. Div. 1984) (dismissing breach of contract claim; "Since it is clear that paragraph number 6 created a condition precedent, the failure of the condition, while excusing plaintiff's performance, is not a breach of contract by defendant subjecting him to liability for damages.") (citation omitted); *Merritt Hill Vineyards, Inc. v.*

<div style="text-align:center">20</div>

*Windy Heights Vineyard, Inc.*, 463 N.Y.S.2d 960, 962 (N.Y. App. Div. 1983) (dismissing breach

of contract claim based only on vendors' non-performance of condition precedent calling for

parties to complete other transaction), *aff'd*, 460 N.E.2d 1077 (N.Y. 1984).

The focus of the Agent Agreement is on ZCom's sale of Verizon Wireless services as a

Verizon Wireless agent.  At best, Section 14 of the Agreement did no more than condition

Verizon Wireless's contract right to bring a lawsuit against ZCom arising under the Agreement

on the occurrence of certain pre-suit actions.[11]  Even if ZCom's characterizations of Section 14

and the corresponding significance of Verizon Wireless's pre-suit actions were correct, then it

would be entitled to nothing more than a judgment dismissing the declaratory judgment action

due to the non-occurrence of a condition precedent to such a suit.  But that does not give rise to

any claim for breach of contract, nor entitle ZCom to any damages.[12]  Count VIII should

therefore be dismissed with prejudice.

**B.   ZCom's Unjust Enrichment Claim Is Barred By The Agent Agreement.**

Count VII purports to assert a claim for unjust enrichment.  No such claim can lie,

however, where the subject matter of the claim is already covered by a valid and enforceable

written contract between the parties.  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield*

*of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006); *Bank Midwest, N.A. v. Hypo Real Estate Cap.*

---

[11]  Verizon Wireless disputes that Section 14 is either a condition precedent to its ability to
maintain the declaratory judgment action, or that it requires either pre-suit "notice" if a party
"intends to litigate," Complaint ¶ 770, or specific negotiations regarding the judicial enforcement
of its right to terminate ZCom for cause.  Nonetheless, Verizon Wireless accepts ZCom's
allegations as true solely for purposes of this motion, as required by Fed. R. Civ. P. 12(b)(6).

[12]  Even if ZCom were correct that Verizon Wireless "breached" Section 14, it has not suffered
recoverable damages as a result of any such breach.  The only monetary loss that ZCom would
have suffered is the attorneys' fees that it expended in defending the action.  This Court, however,
may not award attorneys' fees to a successful litigant "absent *express* authorization by statute,
court rule or contract."  *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 (3d Cir. 1990)
(emphasis in original).  To the contrary, the Agent Agreement *precludes* ZCom from recovering
consequential, incidental or indirect damages of any nature.  Complaint Ex. 4 at ¶ 13.

*Corp.*, 2010 WL 4449366 *5 (S.D.N.Y. Oct. 13, 2010) (dismissing unjust enrichment claim brought by principal against agent in dispute over proposed loan; parties' agent agreement already covered scope of agent's duties in procuring loans).  Contract parties may not use unjust enrichment claims as a vehicle to upset the benefit of their bargain by seeking recovery of additional categories of damages not recognized by the contract.  *See, e.g.*, *Sevel Argentina, S.A. v. General Motors Corp.*, 46 F. Supp. 2d 261, 270-71 (S.D.N.Y. 1999) (dismissing unjust enrichment claim by terminated distributor of auto manufacturer based on value of "investments of time, money and effort" over course of parties' long-standing relationship; since claim was "based upon the same efforts and expenditures required to perform the . . . Contracts, that same performance cannot give rise to a quasi-contract claim for . . . unjust enrichment").

ZCom does not deny that the Agent Agreement governed its relationship with Verizon Wireless from October 7, 2008 until the effective date of the Agreement's termination on January 31, 2012.  SOF.  Nor does ZCom deny that its unjust enrichment claim arises entirely out of its sale (both directly and through sub-agents) of Verizon Wireless services, which are expressly covered by the Agreement.  Accordingly, ZCom may not assert a duplicative unjust enrichment claim.

## C. New York Law And The Agent Agreement Preclude ZCom From Recovering Punitive Damages Under Its Breach Of Contract Claims.

All of ZCom's contract-based claims include prayers for an award of punitive damages. Complaint ¶¶ 760, 782, 815, 845.  Punitive damages are not recoverable under New York law for a simple breach of contract.  *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 793 (2d Cir. 1986).  In addition, punitive damages are expressly unavailable to ZCom as to *any* of its claims, pursuant to the Agent Agreement.  Specifically, ZCom agreed that Verizon Wireless "SHALL NOT BE LIABLE TO [ZCOM] FOR ANY . . . PUNITIVE, SPECIAL OR

TREBLED OR ENHANCED DAMAGES . . . WHETHER SUCH DAMAGES ARE CLAIMED

FOR BREACH OF CONTRACT, NEGLIGENCE OR OTHERWISE AND WHETHER OR

NOT VZW HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES . . . ."

Complaint Ex. 4 at ¶ 13 (emphasis in original).  ZCom's prayers for punitive damages as to these

claims should therefore be stricken.

## **CONCLUSION**

For the foregoing reasons, Verizon Wireless and Messrs. Broomes, Velez, Fiocco, and

Pavlicek respectfully request that this Court dismiss the Complaint in its entirety and with

prejudice.

<div style="margin-left: 40%">

Respectfully submitted,

/s/ Philip R. Sellinger
Philip R. Sellinger
Todd L. Schleifstein
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410
Attorneys for Defendants
   Cellco Partnership d/b/a Verizon Wireless,
   Ryan Broomes, Jorge Velez, Anthony Fiocco,
   and Bruno Pavlicek

</div>

Dated:  June 22, 2012