Jeremy D. Frey
William Gibson
PEPPER HAMILTON LLP
*(A Pennsylvania Limited Liability Partnership)*
Suite 400
301 Carnegie Center
Princeton, New Jersey 08543-5276
(609) 452-0808 – Phone
(609) 452-1147 – Fax

*Attorneys for Defendant Tom Varghese*

## UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN TOUCH CONCEPTS, INC., d/b/a ZCOM, | **DOCKET NO.** |
| *Plaintiff,* | **12-CV-00542 (PGS) (TJB)** |
| -against- | |
| (1) CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, (2) TOM VERGHESE, (3) RYAN BROOMES, (4) JORGE VELEZ, (5) ANTHONY FIOCCO, (6) BRUNO PAVLICEK, (7) AJAY BHUMITRA; (8) SHELLY BHUMITRA, (9) POONAM SAWNHEY; and, (10) JOHN/JANE DOE CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS PERSONNEL ## 1-10, so named as their identities have yet to be established, | |
| *Defendants.* | |

### BRIEF OF DEFENDANT TOM VARGHESE IN SUPPORT OF MOTIONS TO DISMISS CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND TO STRIKE PORTIONS OF COMPLAINT PURSUANT TO FED. R. CIV. P. 12(F)

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    A.    Alleged Prepaid Scheme ............................................................................. 4
    B.    Alleged "Freeze Out" of New ZCom Business ..................................................... 5
    C.    Irrelevant and Scandalous Material ..................................................................... 6

LEGAL ARGUMENT .......................................................................................................... 6

I.    PLAINTIFF'S COMPLAINT AGAINST TOM VERGHESE SHOULD BE
    DISMISSED FOR FAILURE TO STATE ANY CLAIMS ............................................. 6

    A.    Count Two (Fraud and Deceit) and Count Three (Misrepresentation)
        Should be Dismissed ................................................................................. 9
    B.    Count One (Tortious Interference with Contractual Relations) Should be
        Dismissed ................................................................................................ 10
    C.    Count Four (Tortious Interference with Prospective Contractual Relations)
        Should be Dismissed ................................................................................ 12
    D.    Counts Five, Six and Seven should be Dismissed Against Mr. Varghese
        Because He had No Involvement in the Alleged Conduct .................................. 14

II.    PARAGRAPHS 391-402 OF THE AMENDED COMPLAINT SHOULD BE
    STRICKEN ............................................................................................................ 15

CONCLUSION ................................................................................................................... 17

#16193573 v9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ............................................................6, 7, 14

*B & M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474 (S.D.N.Y. 2010) ..........12

*Bayer Schera Pharma AG v. Sandoz, Inc.*, 2010 U.S. Dist. LEXIS 33252 (S.D.N.Y. Mar. 29, 2010) ..................................................................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................6, 7

*Berman v. Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008) .........................................11

*Boehner v. Heise*, 734 F. Supp. 2d 389 (S.D.N.Y. 2010) .............................................12

*Bose v. Interclick, Inc.*, No. 10-CV-9183, 2011 U.S. Dist. LEXIS 93663, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) .......................................................................11

*Bus. Networks of NY, Inc. v. Complete Network Solutions, Inc.*, 265 A.D.2d 194 (1st Dep't 1999) ...........................................................................................................13

*Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013 (C.D. Cal. 1998) ............................16

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir. 1997) .............8

*Cohen v. Telsey*, 2009 WL 374059 (D.N.J. Nov. 2, 2009) ............................................9

*DePasquale v. Morgan Stanley Smith Barney LLC*, Civ. No. 10-6828, 2011 WL 3703110 (D.N.J. Aug. 23, 2011) ..............................................................................6, 7

*DiVittorio v. Equidyne Extractive Indus, Inc.*, 822 F.2d 1242 (2d Cir. 1987) ................8

*Fantasy v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) .....................................................16

*Four Asteria Realty, LLC v. BCP Bank of N. Am.*, 22 Misc. 3d 1127A  (Sup.  Ct. Kings County Feb. 26, 2009) ..........................................................................................13

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ....................................6, 7, 14

*Highland Capital Mgmt. LP v. Schneider*, 198 Fed. Appx. 41 (2d Cir. N.Y. 2006) ....................10

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239 (S.D.N.Y. 2009) ..................................................................................................................11

*Kim v. Baik*, Civ. No. 06-3604, 2007 U.S. Dist. LEXIS 13553, 2007 WL 674715 (D.N.J Feb. 27, 2007) ......................................................................................................15

**Page(s)**

*Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (NY 1996) ...................................11

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) .............................................11, 13

*Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339 (W.D. Pa. 1986) .........................16

*Mandarin Trading Ltd. v. Wildenstein*, 65 A.D. 3d 448 (1st Dept. 2009) ....................................9

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. N.Y. 1993) ............................................9

*Murray v. Sevier*, 156 F.R.D. 235 (D. Kan. 1994) ......................................................................16

*Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. N.Y. 2000) .....................13

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231 (Bankr. S.D.N.Y. 2008) ............................................................................................................................8

*Pigford v. Veneman*, 215 F.R.D. 2 (D.D.C. 2003) .....................................................................16

*Pub. Serv. Enter. Group, Inc., v. Philadelphia Electric*, 722 F. Supp. 184 (D.N.J. 1989) ............13

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) .......................................................................13

*River Road Dev. Corp. v. Carlson Corp.*, Civ. No. 89-7037, 1990 U.S. Dist. LEXIS 6201 (E.D.Pa. May 23, 1990) ...............................................................................................................15

*Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488 (2007) .......................................................9

*Saporito v. Combustion Engineering Inc.*, 843 F.2d 666 (3d Cir. 1988) .......................................8

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974) ..............................................8

*Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984) .................8

*Silverstein v. Percudani*, 422 F. Supp. 2d 468, 472-473 (M.D. Pa. 2006) ..................................10

*Vicom, Inc., v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994) ........................10

*Wiseberg v. Toyota Motor Corp.*, 2012 U.S. Dist. LEXIS 45849 (D.N.J. Mar. 30, 2012).........158

RULES AND OTHER AUTHORITIES

Federal Rule of Civil Procedure Rule 9(b) ............................................................................3, 7, 8, 9

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................6, 9, 10

Federal Rule of Civil Procedure 12(f) ...................................................................................15, 17

## <u>INTRODUCTION</u>

This case arises out of a contract between Plaintiff In-Touch Concepts, Inc. d/b/a ZCom ("ZCom" or "Plaintiff") and Defendant Cellco Partnership d/b/a Verizon Wireless ("VZW") related to the sale of VZW's cellular phone services to third parties.  ZCom's contract with VZW was terminated as of January 31, 2012, allegedly due to financial and business improprieties.  Instead of only bringing a breach of contract suit solely against VZW, Plaintiff has chosen to sue multiple parties in tort, including two of its own sub-agents and several current and former VZW employees, including Tom Varghese.[1]  In addition, ZCom has sued in tort a commercial rival, Ajay Bhumitra, alleging that he conspired with VZW and its employees, including Mr. Varghese, as part of a complicated and implausible scheme to destroy ZCom.

Though the First Amended Complaint ("Am.  Compl.") is filled with florid rhetoric and conspiracy theories involving VZW, its employees and diverse others, review of the actual allegations against Mr. Varghese demonstrates that they are spurious and that he is not a proper party to this case.  Plaintiff makes the following claims against Mr. Varghese, whose employment with Verizon terminated on about July 1, 2011:

- Tortious interference with contractual relations between ZCom and its customers and sub-agents, by allegedly encouraging the sub-agents to enroll fraudulent subscribers (Count One);

- Fraud and deceit, by allegedly participating in a scheme whereby VZW would "charge back" a portion of the money it paid to its agent ZCom (Count Two);

- Misrepresentation, by allegedly failing to inform ZCom about the aforementioned chargebacks (Count Three);

- Tortious interference with prospective contractual relations, by allegedly preventing ZCom from opening new stores since 2009 (Count Four);

---

[1]Mr. Varghese's name is misspelled in the Caption and Amended Complaint.

- Tortious interference with prospective contractual relations, by allegedly interfering with ZCom's business in late 2011 and early 2012 (Count Five);

- Injurious falsehood, by allegedly stating, in late July 2011 and thereafter, that ZCom orchestrated the prepaid activation scheme (Count Six);

- Unjust enrichment, by allegedly keeping ZCom's customers without paying residuals after ZCom was terminated in January 2012 (Count Seven).[2]

Each of these claims should be dismissed as a matter of law. To the extent applicable, Mr. Varghese joins in the legal arguments of his co-defendants, including all the other VZW Defendants, in seeking dismissal of the First Amended Complaint. Rather than repeat all those claims here, Mr. Varghese adopts and incorporates the applicable legal arguments.

As an initial matter, Counts Five, Six and Seven all involve actions taken by VZW *after* Mr. Varghese left VZW's employ. He is not a proper defendant in these Counts in the first instance, and they should be dismissed as to Mr. Varghese on these grounds, among others. The remaining claims against Mr. Varghese fail as well.

Count One (tortious interference with contractual relations between ZCom and its customers and subagents) must be dismissed as to Mr. Varghese because, in addition to other reasons stated by Mr. Varghese's co-defendants, the Amended Complaint fails to identify which subagents were induced to violate their contracts or which were terminated by ZCom as result of any such breach. It does not specify any actions or statements made by Mr. Varghese to induce any breach by the subagents. Counts Two and Three (sounding in fraud) must be dismissed because ZCom has failed to allege adequately in either Count that Mr. Varghese made or caused to be made any misrepresentations to ZCom about VZW's "prepaid program." The Plaintiff's pleading strategy of simply lumping defendants together as "VZW Defendants" does not satisfy

---

[2]The remaining Counts 8-11 do not include Mr. Varghese as a defendant..

the particularity requirements of Rule 9(b).  Additionally, as noted by Mr. Varghese's co-defendants, Count Four (tortious interference with prospective contract) must be dismissed not only because it is barred by the "economic loss" doctrine, but also because Plaintiff has failed to identify any third parties with whom it would have entered into a contract.

In sum, the Amended Complaint, rather than stating any viable claim against Tom Varghese, demonstrates that Plaintiff, in its flailing effort to pressure its commercial rival Ajay Bhumitra and its former contract partner VZW, has merely cast a too-wide net.  Along the way, Plaintiff has abused the Federal notice pleading rules to bring unsubstantiated and unsupportable claims against parties, most notably Mr. Varghese, who have nothing at all to do with the disputed issues.  As demonstrated below, even if Plaintiff's claims against Mr. Varghese were grounded in fact, and they are not, they must be dismissed.

In addition, the Amended Complaint includes scandalous and irrelevant allegations about Mr. Varghese that are not related to the substantive claims advanced by ZCom. In the event the Amended Complaint is not dismissed against Mr. Varghese, the allegations in Paragraphs 391 to 402 of the Amended Complaint should be stricken.

## **BACKGROUND**[3]

Tom Varghese was VZW's Director of Indirect Marketing for the New York Metro Region until July 2011.  (Am.  Compl. ¶ 56).  Plaintiff claims two, seemingly unrelated categories of conduct by Mr. Varghese during his VZW employment:  participation in VZW's "prepaid scheme" and orchestrating a "freeze out" that prevented ZCom and its subagents from opening new stores.

---

[3]Defendant Varghese refers the Court to the Brief of Defendants Cellco Partnership d/b/a Verizon Wireless, Ryan Broomes, Jorge Velez, Anthony Fiocco, and Bruno Pavlicek in Support of Motion to Dismiss First Amended Complaint ("Verizon Wireless' Brief") for a more detailed account of the relationship between VZW and ZCom. This statement of facts will focus solely on the allegations against Mr. Varghese.

### A.      Alleged Prepaid Scheme

The Amended Complaint[4] alleges that Mr. Varghese, acting in his capacity as a VZW employee, approved and encouraged a "pre-paid activation push" whereby VZW encouraged ZCom and its subagents to invite customers who upgraded their wireless phones to activate the customers' old phones as emergency devices.  (Am.  Compl. ¶¶ 260-61).  VZW provided certain monetary incentives to ZCom and its subagents to enroll their customers in the prepaid program.  (Am.  Compl. ¶¶ 269-270).  The Complaint alleges that if the customers did not use their phone within a certain time period, VZW would "charge back" from ZCom and its subagents an amount of money such that ZCom and the subagents lost money on each prepaid phone that was not timely used to make a phone call.  (Am.  Compl. ¶¶ 295-96; 300-01).  According to the Complaint, ZCom and its subagents were not informed that these calls needed to be made in order to avoid these chargebacks.  (Am.  Compl. ¶ 273-79).

In addition, the Complaint alleges (without providing any specific information regarding Mr. Varghese) that VZW and certain other VZW employees, including Mr. Varghese, interfered with ZCom's relationships with its subagents by encouraging the subagents to activate prepaid wireless phones using fictitious names.  (Am.  Compl. ¶ 50).  This was allegedly done in order to artificially inflate VZW's reported number of new cell phone activations.  (Am.  Compl. ¶ 520).  Notably, the Complaint's 862 paragraphs do not include a single instance of Mr. Varghese communicating with a ZCom subagent at all, much less directing a subagent to enroll fictitious customers.[5]

---

[4]The allegations in the Amended Complaint are accepted as true for the purposes of the instant motion only.

[5]The Complaint does include the allegation, without any support, that ZCom subagents "Shelly and Poonam were acting with the approval of defendant Verghese [sic]" when they activated phones using fictitious names.  (Am. Compl. ¶ 536).

**B.     Alleged "Freeze Out" of New ZCom Business**

According to the Amended Complaint, commencing in 2009 VZW and its employees, including Mr. Varghese, took additional measures to harm ZCom at the behest of two co-defendants, Ajay and Shelly Bhumitra.  This conduct allegedly tortiously interfered with ZCom's right to prospective contractual relationships.  Ajay Bhumitra, like ZCom, is a principal of a business that sells wireless devices and services as an agent.  However, he is not an agent of VZW but of Sprint Nextel and AT&T.  (Am.  Compl. ¶ 104).  Shelly Bhumitra, Ajay's brother, was the principal of ZCom subagent Reachout Wireless.  (Am.  Compl. ¶ 110).  According to the Complaint, Mr. Varghese was friends with Ajay and Shelly Bhumitra.  (Am.  Compl. ¶ 57).  The Complaint alleges, without providing any specific information or any supporting evidence, that Mr. Varghese was "bribed and corrupted" by the Bhumitras.  (Am.  Compl. ¶¶ 8, 107, 117).  However, at the end of the lengthy Amended Complaint, Plaintiff finally admits, by use of the phrase "upon information and belief," that he has no evidence or actual knowledge of these supposed bribes.  (Am.  Compl. ¶ 664 ("Upon information and belief, Verghese [sic] while working for and on behalf of VZW, accepted the bribes paid by Shelly, Poonam and Ajay.")).

The Complaint alleges that as a result of these supposed bribes, VZW and its employees, including Mr. Varghese, beginning in 2009 "froze out" ZCom from new store growth by deciding, in his capacity as a VZW employee, not to approve new ZCom stores and ZCom subagents.  (Am.  Compl. ¶ 356).  ZCom's Agent Agreement with VZW explicitly provided that all new ZCom stores and ZCom subagents must be explicitly approved in writing by VZW.  (Ex. 4 to Complaint at §§ 2.4.2; 2.7).  Further, the Complaint alleges that "[u]pon information and belief, the policies and practices that were employed by the VZW Defendants to freeze ZCom's growth were approved of by, *inter alia*, by [sic] VZW."  (Am.  Compl. ¶ 675).

C.      Irrelevant and Scandalous Material

The Complaint also includes irrelevant and scandalous material about Mr. Varghese that is unrelated to Plaintiff's claims and is designed only to harm Mr. Varghese's reputation, including allegations about the workplace and immigration status of a former girlfriend (Am. Compl. ¶ 402c) and allegations that Mr. Varghese solicited a bribe from a former ZCom employee not involved in this case (Am. Compl. ¶¶ 397-99).  In this connection, Mr. Varghese is moving to strike Paragraphs 391-402 of the Complaint.

## LEGAL ARGUMENT

## I.      PLAINTIFF'S COMPLAINT AGAINST TOM VERGHESE SHOULD BE DISMISSED FOR FAILURE TO STATE ANY CLAIMS

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  A Rule 12(b)(6) motion will be granted if the plaintiff has not alleged enough facts "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *see also DePasquale v. Morgan Stanley Smith Barney LLC*, Civ. No. 10-6828 (WJM-MF), 2011 WL 3703110, at *2 (D.N.J. Aug. 23, 2011).

A complaint must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S.Ct. at 1949.  In *Fowler v. UPMC Shadyside*, the Third Circuit held that after *Iqbal*, district courts should conduct "a two-part analysis" of motions presented under Rule 12(b)(6).  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).First, courts should separate "the factual and legal elements of a claim, so that while the

district court must 'accept all of the complaint's well-pleaded facts as true,' it may "disregard

any legal conclusions.'"  *Id.*  Second, the court must then determine "whether the facts alleged in

the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.*

(citing *Iqbal*, 129 S.Ct. at 1950).  A pleading that offers only "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555;

*see also DePasquale*, 2011 WL 3703110, at *2.  "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at

557).

       This plausibility standard requires drawing a distinction between merely *alleging*

entitlement to relief, which is insufficient, and "show[ing] such an entitlement with . . . facts,"

which is what is required under *Iqbal*.  *Id.*  Where the facts alleged do not permit the court to

infer more than "the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 129 S. Ct. at 1950.  As *Fowler*

explains, this "plausibility" determination will be "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  578 F.3d at 211 (quoting

*Iqbal*, 129 S.Ct. at 1950).

       In addition to satisfying the *Iqbal* pleading standards, when, as here, claims sound

in fraud, Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent,

knowledge, and other condition of mind of a person may be averred generally."  Thus, under

9(b), plaintiffs must plead with particularity the "circumstances" of the alleged fraud and provide

some means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).

The purpose of Rule 9(b) is to promote three goals: "(1) providing a defendant with fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." *DiVittorio v. Equidyne Extractive Indus, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (citation omitted). In order to meet these goals, Rule 9(b) imposes additional limitations on a plaintiff's pleadings when fraud is implicated. First, a pleader cannot allege fraud based upon information and belief unless the facts are "peculiarly within the opposing party's knowledge." *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976 (1975), *overruled on other grounds by Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1100 n.9 (1991); *accord Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 664 (2d Cir. 1997) (citation omitted). In such instances, however, the pleader must nonetheless allege facts upon which the belief is founded. *Campaniello Imps.*, 117 F.3d at 664. In addition, "group pleading is generally forbidden because each defendant is entitled to know what he is accused of doing." *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257-58 (Bankr. S.D.N.Y. 2008) (citation omitted); *see also Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 675 (3d Cir. 1988) (dismissing a RICO complaint based on wire fraud because it did not identify who made the misrepresentations to whom).

As set forth below, and in the incorporated arguments of the other co-defendants in their Motions to Dismiss, this Court should grant Defendant's Motion and dismiss with prejudice Plaintiff's Complaint against Mr. Varghese in its entirety.

-8-

A.     **Count Two (Fraud and Deceit) and Count Three (Misrepresentation) Should be Dismissed**

Plaintiff's Counts Two and Three for "Fraud and Deceit" and "Misrepresentation" claim that the VZW Defendants, including Mr. Varghese, deceived ZCom and its subagents by "suppressing the true facts" about features of the prepaid promotion, particularly the need for test calls (Am.  Compl. ¶¶ 606-607 (Second Cause of Action); ¶¶ 627 (Third Cause of Action). Because these causes of action relate to the same set of facts and allegations, and because "[t]he elements of a cause of action for fraudulent misrepresentation are the same as for fraud" (*Mandarin Trading Ltd. v. Wildenstein*, 65 A.D. 3d 448, 459 (1st Dept. 2009), these causes of action can be analyzed together.

Under both New Jersey and New York law, the elements of a claim of fraud are: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss."  *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488, 868 N.E.2d 189, 836 N.Y.S.2d 509 (2007); *Cohen v. Telsey*, 2009 WL 374059 at * 12 (D.N.J. Nov. 2, 2009).

These fraud-based causes of action must be dismissed against Mr. Varghese because they do not adequately provide notice, pursuant to Rules 12(b)(6) and 9(b), of the specific actions he is alleged to have taken.  At no point does the Complaint allege that Mr. Varghese made any misrepresentation to ZCom about the prepaid program.  Instead, it repeatedly lumps him together with the "VZW Defendants."  This is insufficient.

As noted above, "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "defendants."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170,

1175 (2d Cir.  N.Y. 1993); see also *Silverstein v. Percudani*, 422 F. Supp. 2d 468, 472-473

(M.D.  Pa. 2006) ("In a case involving multiple defendants, such as the one before us, "the

complaint should inform each defendant of the nature of his alleged participation in the fraud.'")

quoting *Vicom, Inc., v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994);

Plaintiff's Amended Complaint does not allege any false or misleading statements made by Mr.

Varghese.  Indeed, it makes no allegations that Mr. Varghese ever made *any representations* to

ZCom regarding the prepaid program.  Plaintiff's attempt to lump the VZW Defendants together

as a unit, and to plead their conduct generally, simply does not satisfy the requirements of

pleading fraud under Rule (9)(b)'s particularity requirement.

       For these reasons, as well as the reasons set forth in the Motions to Dismiss of the

other co-defendants, Plaintiff's Count Two and Three against Mr. Varghese must be dismissed.

### B.   Count One (Tortious Interference with Contractual Relations) Should be Dismissed

       Plaintiff's Count One claims that the VZW Defendants, including Mr. Varghese,

"encouraged the mass fraudulent activation of previously discarded wireless equipment as

prepaid instruments, even using false information, including fictitious names."  (Am.  Compl. ¶

521).  According to ZCom, "[t]he VZW Defendants' imposition of their fraudulent scheme and

plan upon ZCom's family of subagents, independent of ZCom, caused and directed the subagents

to breach their own agreements with ZCom." (Am.  Compl. ¶ 542)

       Under New York and New Jersey law, the elements of tortious interference with

contract are: (1) the existence of a valid contract between the plaintiff and a third party;

(2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third-

party's breach of the contract without justification; (4) actual breach of the contract, and (5)

damages resulting therefrom.  *Highland Capital Mgmt.  LP v. Schneider*, 198 Fed.  Appx. 41, 45

(2d Cir.  N.Y. 2006), citing *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 646 N.Y.S.2d 76, 82 (1996); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993).

      Plaintiff's claim fails against Mr. Varghese for at least two reasons.  First, the Complaint does not adequately allege what contractual provisions between ZCom and its subagents were violated at the urging of Defendants, or that any agents were terminated as a result of the breach.  Indeed, the Complaint does not identify which subagents were induced to breach their contracts or if any were terminated as a result. See *Bose v. Interclick, Inc*., No. 10-CV-9183, 2011 U.S.  Dist.  LEXIS 93663, 2011 WL 4343517, at *10-11 (S.D.N.Y.  Aug. 17, 2011) (dismissing tortious interference with contract claim where plaintiff claimed generally that it had contracts with various parties, but did not give "facts regarding the terms of the contracts or the specific parties to the contracts")*; Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc*., 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009) (denying leave to amend tortious interference with contract claim that had been dismissed because plaintiffs stated only that "defendants interfered with their customer contracts," but did not "specify a single customer contract with which defendants interfered"); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (dismissing claim that merely alleged that a contractual relationship with a third party existed, but set forth no facts about the type of contract, whether it was nonexclusive, and whether it was valid). [6]

      Second, the Complaint includes no specific allegation that Mr. Varghese ever encouraged any ZCom subagent to enroll false customers or to otherwise breach its contract with

---

[6]In addition, because ZCom has not explained the allegedly breached terms of the subagent contracts, it has necessarily failed to adequately allege that Mr. Varghese, or any other defendant, had adequate knowledge of the allegedly breached contracts.

ZCom.  Plaintiff's unsupported allegations that the VZW Defendants' (i) coercion of ZCom's subagents induced them to violate the terms of their agreements with ZCom" (Am.  Compl. ¶ 564) and (ii) misrepresentations to ZCom's subagents induced them to violate the terms of their agreements with ZCom" (Am.  Compl. ¶ 565) lack the required specificity as to involvement by Mr. Varghese or any other VZW Defendant.  *See B & M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) ("The defendant's interference must be direct: the defendant must direct some activities towards the third party. . . ." (internal quotation marks and citation omitted)); *Boehner v. Heise*, 734 F. Supp. 2d 389, 404-05 (S.D.N.Y. 2010) ("Plaintiffs must show Defendants' direct interference with a contract.  That is, Defendants must have directed some activities toward the customers whose contracts are alleged to have been breached.").

For these reasons, as well as the reasons set forth in the Motions to Dismiss of the other co-defendants, Plaintiff's Count One against Mr. Varghese must be dismissed.

## C. Count Four (Tortious Interference with Prospective Contractual Relations) Should be Dismissed

Plaintiff's Count Four alleges that VZW and its employees "unjustly froze ZCom's growth, refusing to approve any further development or expansion of ZCom."  (Am.  Compl. ¶ 653).  This was allegedly done at the behest of (and due to the bribes of) Shelley, Poonam and Ajay (Am.  Compl. ¶ 664) in order to give Ajay "an opportunity to seek to obtain an agency with VZW from his friend Verghese (sic) and take over where ZCom had been." (Am.  Compl. ¶ 661).  ZCom claims that these policies and practices were developed, implemented and approved by VZW.  (Am.  Compl. ¶¶ 673-675).

Under both New York and New Jersey law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2)

the defendant's interference with those business relations; (3) the defendant acted with the sole

purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to

the business relationship.  *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d

Cir.  N.Y. 2000); citing *Purgess v. Sharrock, 33 F.3d 134, 141* (2d Cir. 1994) (citations omitted);

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d at 1167.

   As an initial matter, this claim fails because, as elaborated by the Brief of the

other VZW Defendants, it is barred by the "economic loss" doctrine.  *Pub.  Serv.  Enter.  Group,*

*Inc., v. Philadelphia Electric*, 722 F. Supp. 184 (D.N.J. 1989).  Additionally, ZCom has not

identified a single third party with whom it would have entered into a contract but for the

interference of VZW or Mr. Varghese.  Instead, the Amended Complaint states that VZW

stopped approving "new stores and subagents."  (Am. Compl. ¶¶ 356, 666).  This is not

sufficient to state a claim.  *See e.g.  Bayer Schera Pharma AG v. Sandoz, Inc.*, 2010 U.S.  Dist.

LEXIS 33252 (S.D.N.Y.  Mar. 29, 2010) (dismissing claim of tortious interference with

prospective contract under NY law because "[plaintiff] has not identified any specific business

entities with which it had business relationships.");  *Four Asteria Realty, LLC v. BCP Bank of N.*

*Am.*, 22 Misc. 3d 1127A, 880 N.Y.S.2d 872, Slip Copy 2009 WL 500853, at *7 (Sup.  Ct. Kings

County Feb. 26, 2009) (granting summary judgment because "a claim for tortious interference

with prospective economic advantage must contain allegations of a specific prospective business

relationship which the defendant purportedly frustrated");  *Bus. Networks of NY, Inc. v. Complete*

*Network Solutions, Inc.*, 265 A.D.2d 194, 194 (1st Dep't 1999)(dismissing cause of action where

plaintiff failed to specify any prospective relationship with which defendants interfered).

   Further, this Count fails the *Iqbal* plausibility test.  Plaintiff alleges that Mr.

Varghese and Ajay Bhumitra were motivated to orchestrate the "freeze out" by Ajay's desire to

replace ZCom as a major VZW agent.  (Am. Compl. ¶ 661).  However, Ajay Bhumitra is already

an agent for Sprint Nextel and AT&T, competitors of VZW.  (Am.  Compl. ¶ 104).  VZW's

agency agreements, unlike those of Sprint and Nextel, are exclusive.  It is clear that under these

agreements no agent is allowed to "offer, sell, or market Services or operational, administrative

or other support services in the Area on behalf of any Carrier or Reseller."  Complaint, Ex. 4,

Agent Agreement at § 2.1.1.  Plaintiff's claim that VZW Defendants were working with Ajay to

harm ZCom in order to allow Ajay to replace ZCom is far from even plausible when viewed in

light of the Court's "judicial experience and common sense."  *Fowler,* 578 F.3d at 211.

      For these reasons, as well as the reasons set forth in the Motions to Dismiss of the

other co-defendants, Plaintiff's Count Four against Mr. Varghese must be dismissed.

      **D.**    **Counts Five, Six and Seven should be Dismissed Against Mr. Varghese Because He had No Involvement in the Alleged Conduct**

      As noted above, Plaintiff misuses the "VZW Defendants" designation throughout

the Complaint, lumping together defendants who were in very different capacities.  This misuse

reaches the absurd when applied to Counts Five, Six and Seven, each of which involve actions

by VZW taken after Mr. Varghese's employment was terminated.  According to the Complaint,

Mr. Varghese was no longer employed by VZW as of July 11, 2011.  (Am.  Compl. ¶ 6).  Count

Five alleges tortious interference with prospective contractual relations due to VZW's alleged

interference with ZCom's business in late 2011 and early 2012 (Am.  Compl. ¶¶ 687-713),

months after Mr. Varghese left VZW.  Count Six alleges that VZW made false and public claims

about the reasons it terminated ZCom on July 26, 2011.  (Am.  Compl. ¶¶ 714-46).  Mr.

Varghese had, according to the Complaint itself, already been terminated by then and could not

have influenced any public statements made by VZW.  Count Seven alleges unjust enrichment

because VZW kept ZCom's customers without paying residuals to ZCom after ZCom's Agency

Agreement was terminated on January 31, 2012. This Count has the same infirmity. (Am. Compl. ¶¶ 747-60). For these reasons, as well as the reasons set forth in the Motions to Dismiss of the other co-defendants, Plaintiff's Counts Five, Six, and Seven against Mr. Varghese must be dismissed.

## II.     PARAGRAPHS 391-402 OF THE AMENDED COMPLAINT SHOULD BE STRICKEN

Federal Rule of Civil Procedure 12(f) permits the Court to strike "any redundant, immaterial, impertinent or scandalous matter" from the pleadings. Motions to strike are generally disfavored and are usually denied "unless the allegations have no relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Wiseberg v. Toyota Motor Corp*., 2012 U.S. Dist. LEXIS 45849 (D.N.J. Mar. 30, 2012); *Kim v. Baik*, Civ. No. 06-3604, 2007 U.S. Dist. LEXIS 13553, 2007 WL 674715, at *5 (D.N.J Feb. 27, 2007). However, a "court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." *Id.* (quoting *River Road Dev. Corp. v. Carlson Corp*., Civ. No. 89-7037, 1990 U.S. Dist. LEXIS 6201, 1990 WL 69085, at *2 (E.D.Pa. May 23, 1990)).

"Scandalous matter is that which improperly casts a derogatory light on someone, most typically a party to the action." 5A C. Wright and A. Miller, *Federal Practice and Procedure* (Civil) 2d § 1382, at 712 (1990); *see also* Moore's Federal Practice § 12.37[3] at 12-97 ("Scandalous generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.") (footnote omitted).The striking of offensive material is particularly appropriate when the offensive material is not responsive to an argument, but rather constitutes an inappropriate attempt to abuse the Court's process to attack an individual personally. *See, e.g., Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking

allegations that "reflect adversely on the moral character of an individual who is not a party to this suit" which were "unnecessary to a decision on the matters in question"); see also *Pigford v. Veneman*, 215 F.R.D. 2, 4-5 (D.D.C. 2003)(striking unfounded accusations that opposing counsel was racist); *Murray v. Sevier*, 156 F.R.D. 235, 258 (D. Kan. 1994) (striking allegation that defendant and his counsel "bought off" and paid "hush money" to prospective witnesses); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) (striking allegation that "defendants are '[l]ike vultures feeding on the dead'").

Paragraphs 391 to 402 of the Amended Complaint offer a disputed account alleging Mr. Varghese's solicitation of a bribe from Charu Sodhi, who claims to have then been seeking to become a direct agent of VZW. These unsubstantiated allegations have nothing to do with any of the Counts in the Amended Complaint. ZCom neither does nor can allege it was damaged or impacted adversely in any way by these alleged events, which at the time only involved a former employee.

Further, the allegations at Paragraph 402c are included among those that must be stricken. This provision alleges that Mr. Varghese's former girlfriend was engaged in some kind of immigration fraud with the help of the Bhumitras. This disputed provision seems to have no purpose other than to pressure and prejudice Mr. Varghese. A motion to strike is particularly appropriate when the irrelevant matter is also scandalous, and hence calculated to cause prejudice to the party about whom it is alleged. *See, e.g., Fantasy v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (in copyright infringement action, striking allegations about supposedly fraudulent tax shelter and actions of certain persons who induced counter-claim plaintiff to enter into them). Accordingly, regardless of their disputed accuracy, the allegations in Paragraphs 391-402 have no place in the Amended

-16-

Complaint, and they should be stricken under Fed.  R. Civ.  P 12(f) as immaterial and scandalous.

## **<u>CONCLUSION</u>**

For all of the above reasons, Plaintiffs' First Amended Complaint against Mr. Varghese must be dismissed with prejudice or, in the alternative, Paragraphs 391-402 of the Complaint should be stricken.


Dated:  June 22, 2012

<div style="margin-left: 40%;">

/s/ William Gibson_____
Jeremy D. Frey
William Gibson
PEPPER HAMILTON LLP
*(A Pennsylvania Limited Liability Partnership)*
Suite 400
301 Carnegie Center
Princeton, New Jersey 08543-5276
(609) 452-0808 – Phone
(609) 452-1147 – Fax

</div>