UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IN TOUCH CONCEPTS, INC.,

Plaintiff,

-against-

CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS, TOM VERGHESE, RYAN BROOMES,
JORGE VELEZ, ANTHONY FIOCCO, BRUNO
PAVLICEK, AJAY BHUMITRA, SHELLY
BHUMITRA, POONAM SAWNHEY, and JOHN/
JANE DOE CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS PERSONNEL ##1-10, so named as their
identities have yet to be established,

Defendants.
--------------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-18-13
```

13 Civ. 1419 (PKC)

MEMORANDUM AND ORDER

CASTEL, District Judge:

Plaintiff In Touch Concepts, Inc. ("Zcom") moves for reconsideration of this Court's June 4, 2013 Memorandum and Order. In Touch Concepts, Inc. v. Cellco Partnership, No. 13 Civ. 1419 (PKC), __ F. Supp. 2d __, 2013 WL 2455923 (S.D.N.Y. June 4, 2013). The Memorandum and Order granted in part the motion to dismiss filed by Cellco Partnership ("Verizon"), Ryan Broomes, Jorge Velez, Anthony Fiocco, and Bruno Pavlicek (Docket No. 42), and granted in its entirety the motion to dismiss filed by Tom Varghese (Docket No. 46), a former Verizon employee. For the reasons set forth below, the motion for reconsideration is denied.

## BACKGROUND

The Court refers the reader to the June 4, 2013 Memorandum and Order for a more complete background of the case. See generally In Touch, 2013 WL 2455923. In brief, pursuant to an Agency Agreement, Zcom was authorized to sell Verizon wireless services and

retain subagents subject to Verizon's approval.  The convoluted 862-paragraph Amended Complaint centered on an alleged scheme to boost cellular telephone activations by promoting prepaid "emergency use" phones.

According to Zcom, Verizon and its employees promised Zcom a commission for each prepaid account that remained active for more than 180 days, but did not inform Zcom that the phone would deactivate before 180 days elapsed unless a test call was made.  At the same time, Verizon employees coerced and encouraged Zcom's subagents to activate prepaid accounts, even under fictitious names.  Verizon ultimately blamed Zcom for originating the fraudulent prepaid activations, terminated the Agency Agreement, and refused to consent to the sale of Zcom store locations to other authorized Verizon agents.

The Amended Complaint's eleven causes of action included claims for breach of contract asserted solely against Verizon and various tort claims asserted against Verizon and several of its employees, Broomes, Velez, Fiocco, Pavlicek, and Varghese.  The Court's June 4, 2013 Memorandum and Order dismissed the Amended Complaint except for the fraud claims asserted against Verizon, Broomes, and Velez.  The Court directed Zcom to move to replead within twenty days.  Zcom has not done so and the time to do so has expired.

Instead, Zcom filed this motion for reconsideration of the Court's rulings on the breach of contract claims (Counts VIII, IX, X, and XI); fraud claims (Counts II and III); and tortious interference claims (Counts I and V).  Zcom does not move the Court to reconsider the dismissal of Count IV for tortious interference, Count VI for injurious falsehood, and Count VII for unjust enrichment. [1]

---

[1] The Court remanded the claims asserted against Ajay Bhumitra, Shelly Bhumitra, and Poonam Sawnhey (the "non-Verizon defendants") to New York State Supreme Court, where a separate action involving the same parties remains pending.  Zcom takes issue with those defendants' assertions to this Court regarding the ongoing state court proceeding.  It asserts Justice Ramos's bench decision dismissing several of Zcom's counterclaims in that action

## LEGAL STANDARD

Zcom moves for reconsideration pursuant to Local Rule 6.3 and Rules 54(b) and 60(b), Fed. R. Civ. P.  Local Rule 6.3 permits a party to move for reconsideration of "matters or controlling decisions which counsel believes the Court has overlooked."  A motion to reconsider is "addressed to the sound discretion of the district court[.]"  See Mendell ex rel. Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990).  A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  Id. at 257.

A motion for reconsideration "should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Kolel Beth Yechiel of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (citation and quotations omitted).  Plaintiff has neither identified any intervening change of controlling law nor set forth any newly discovered evidence.  Accordingly, in order to prevail on its motion, plaintiff must show the need to correct clear error or prevent manifest injustice.  See id.

The Court need not consider arguments raised for the first time on a motion for reconsideration and such arguments are generally considered waived.  See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 159 (2d Cir. 2003).  "The reason for the rule confining reconsideration to matters that were overlooked is to

---

erroneously relied on representations by the non-Verizon defendants and Zcom's right to reargue or appeal Justice Ramos's decision remains.  The Court need not address these assertions further because no relief is sought as to the claims asserted against the non-Verizon defendants.

3

ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." <u>Sikhs for Justice v. Nath</u>, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (citation and quotation marks omitted). Were it otherwise, "disappointed litigants would be forever raising new arguments and there would be no end to litigation." <u>Associated Press v. U.S. Dep't of Def.</u>, 410 F. Supp. 2d 147, 152 (S.D.N.Y. 2006).

DISCUSSION

Zcom's motion does little more than reassert allegations in the Amended Complaint and arguments pressed in opposition to the motions to dismiss. The Court addresses Zcom's claims for (1) breach of contract, (2) fraud, and (3) tortious interference.

I.   <u>Breach of Contract Claims</u>

Zcom asserted that Verizon breached the Agency Agreement by (1) claiming in bad faith that Zcom's termination was without cause, when in reality Verizon terminated the Agency Agreement for cause based on fabricated evidence (Count IX); (2) otherwise breaching the implied covenant of good faith and fair dealing (Count X); and (3) failing to provide pre-suit notice in a parallel action filed in the District of New Jersey (Count VIII).

Despite Zcom's urging, the Court need not reconsider the issue of whether, under New York law, parties to a contract may expressly waive the implied covenant of good faith and fair dealing. Zcom sought a declaratory judgment (Count XI) invalidating the Agency Agreement's express waiver of the implied covenant. (<u>See</u> Am. Compl. Ex. 4 ¶ 10.2.) In the June 4, 2013 Memorandum and Order, the Court assumed without deciding that the covenant should be implied into the Agency Agreement. <u>In Touch</u>, 2013 WL 2455923 at *15.

4

1. <u>Breach of Contract due to Termination of Agency Agreement</u> (Counts IX and X)

Subparagraph 8.8 of the Agency Agreement unambiguously permits Verizon to terminate Zcom "with or without cause" provided it gives at least six month written notice.[2]  The Court considered the contract as a whole.  It specifically addressed other provisions in Paragraph 8, which require Verizon to, <u>inter alia</u>, exercise "reasonable discretion" before termination or provide Zcom time to cure a breach before termination.  (<u>Id.</u> Ex. 4 ¶¶ 8, 8.1-8.7.)  Rather than terminating the Agency Agreement pursuant to a more specific provision in Paragraph 8, Verizon chose to terminate the Agency Agreement without cause, pursuant to Subparagraph 8.8, and endure the six-month notice period.  This Verizon has a contractual right to do.

Zcom urges that, on a motion to dismiss, a Court must accept as true the allegation that Verizon's "claims and terminal-clause election were false." (Pl. Mem. at 2.)  But the letter of termination contradicts the assertion that Verizon did not terminate Zcom pursuant to Subparagraph 8.8.  (Am. Compl. Ex. 5.)  The Court need not accept allegations as true which are contradicted by exhibits attached to the pleading.  <u>See</u> <u>Anderson v. Davis Polk & Wardwell LLP</u>, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012).  Zcom insists that "just because [Verizon] says the termination was pursuant to a particular provision of the contract does *not* make it so." (Pl. Mem. at 15.)  After stating the termination was "without cause," the letter "point[s] out that Verizon Wireless [had] grounds for a 'with cause' termination," listing eleven separate grounds. (Am. Compl. Ex. 5.)   But as the Court made plain in its prior opinion, even if Verizon's citation to Subparagraph 8.8 in the termination letter was merely pretextual, this did not impact its conclusion.[3]  <u>In Touch</u>, 2013 WL 2455923 at *17.  Rather than invoking a "for cause"

---

[2] Because the Court concluded the Agreement was unambiguous it need not resort to the doctrine of <u>contra preferentum</u>.

[3] The Court acknowledges Verizon's counsel's letter of October 19, 2011, which responds to Zcom's demand for indemnification in the state court proceeding involving the non-Verizon defendants.  (Am. Compl. Ex. 9.)  Though

termination provision such as Subparagraph 8.4.1, which would have permitted Verizon to terminate the Agency Agreement immediately, it chose to terminate the Agency Agreement "without cause" and endure the additional six-month waiting period. Zcom's assertion on this motion that Verizon benefited from the six-month delay because an immediate termination would have left 25% of the metropolitan market without service (Pl. Mem. at 13) does not impact the Court's conclusion.

The implied covenant of good faith and fair dealing does not save Zcom's claim. Zcom urges that the Court's prior Memorandum and Order recognized but misapplied the case law regarding the implied covenant, which prohibits a party from exercising contractual discretion arbitrarily or irrationally. After thorough consideration of that case law, the Court concluded, "[t]he language in Paragraph 8.8 makes plain that the fruits of the contract were contingent on Verizon's absolute discretion to terminate" and that Verizon was entitled to the benefit of its bargain. Id. at *18. Zcom identifies no controlling law or overlooked factual matter that would alter the Court's conclusion that the termination did not breach the implied covenant of good faith and fair dealing. Zcom cites Matter of L&M Bus Corp. v New York City Dept. of Educ., 71 A.D.3d 127 (1st Dep't 2009), aff'd, 17 N.Y.3d 149 (2011) and Outback/Empire I, Ltd P'ship v. Kamitis, Inc., 35 A.D.3d 563 (2d Dep't 2006) as standing for the proposition that a party with a unilateral termination right must exercise that right in good faith. However, those cases do not support the conclusion that, under New York law, a provision of a private agreement granting one party the right to terminate "without cause" should be read to limit the discretion of the party exercising that right. The L&M Bus Corp. court addressed a government contract governed by the public bidding law (N.Y. Gen. Mun. Law § 103(1)) and

_____

that letter repeats the eleven grounds stated in the termination letter, this letter does not impact the Court's conclusion.

noted that a municipal agency may include a "termination-for-convenience" clause in such a

contract, but it must not be exercised in bad faith and is subject to review under CPLR Article

78. L&M Bus Corp., 71 A.D.3d at 138. The Agency Agreement is not a government contract

and the actions of the contracting parties are not subject to Article 78 review. The Second

Department in Outback held that a party with a unilateral termination right is "required to carry

out its contractual obligations incident to the exercise of its discretion in good faith." Outback,

35 A.D.3d at 563. Here, Verizon fulfilled its contractual obligations incident to the exercise of

its termination right. As explained in the Court's Memorandum and Order, "there is no dispute

that Verizon provided the contractually required six months notice to Zcom for a 'without cause'

termination." In Touch, 2013 WL 2455923 at *16.

        Finally, Zcom challenges the Court's reliance on the New York Court of Appeals'

decision in Moran v. Erk, 11 N.Y.3d 452, 456 (2008), arguing that Moran is distinguishable from

this case because it was based, in part, on considerations specific to the contingency provision at

issue. That argument is unavailing, as courts in this district have "interpreted Moran broadly"

(In Touch, 2013 WL 2455923, at *19) and applied Moran to other types of discretionary clauses,

including a termination clause. See, e.g., Paxi, LLC v. Shiseido Americas Corp., 636 F. Supp.

2d 275, 286 (S.D.N.Y. 2009) (applying Moran to a termination clause) ("[T]he obligation of

good faith and fair dealing does not negate a expressly bargained-for clause that allows a party to

exercise its discretion, unless that clause imposes a limit on the discretion to be exercised or

explicitly states that the duty of good faith and fair dealing applies."); World Wide Polymers,

Inc. v. Shinkong Synthetic Fibers Corp., No. 03 Civ. 8843, 2010 WL 3155176, at *14 (S.D.N.Y.

July 30, 2010) (Preska, J.), aff'd in part, vac'd in part, 694 F.3d 155 (2d Cir. 2012). Zcom cites

Research Found. of State Univ. of New York v. Nektar Therapeutics, (09 Civ. 1292) (GLS)

(CFH), 2013 WL 2145652, at *8 (N.D.N.Y. May 15, 2013) in support of its argument that Moran does not apply. Although the court in that case denied summary judgment for the defendant as to plaintiff's claim of breach of the implied covenant, it also stated that "[t]he covenant cannot be construed in a way to nullify express contractual terms, or, in other words, an implied obligation flowing from the covenant can only be found where it is consistent with express terms of the agreement." Id. (citing Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304 (1983)). While this Court assumed arguendo that the implied covenant applied to the contract, the covenant cannot be construed so as to nullify the express terms of Subparagraph 8.8 of the Agency Agreement.

To the extent Count X, an independent claim for breach of contract by way of breaching the implied covenant of good faith and fair dealing, asserts liability based on the Agency Agreement's termination, the Court has addressed the issue. The Court noted the absence of a plausible allegation in Count X of a breach of any identified provision of the contract; instead, Zcom catalogued the purported misdeeds with no reference to any contractual provisions that Verizon allegedly breached. The motion to reconsider provides no further clarification regarding the basis for the claim.

2. Breach of Contract Due to Failure to Provide Pre-Suit Notice (Count VIII)

The Court also dismissed Zcom's claim that Verizon breached the Agency Agreement by not complying with pre-suit notice and negotiation provisions (Am. Compl. Ex. 4 ¶ 14) before filing suit in the District of New Jersey. The Court noted that generally, under the "American Rule," a party may not recover attorneys' fees absent a statutory or contractual fee-shifting provision. Zcom now asserts that even if a breach causes no loss, the injured party may recover nominal damages.

8

The Court's Memorandum and Order acknowledged that Zcom did not address Verizon's argument that Count VIII merely alleged the non-occurrence of a condition precedent. As Zcom's failure to allege that the breach *caused* it damages is a sufficient basis to deny the motion for reconsideration, the Court need not address Zcom's belated attempt to refute this argument, as it need not consider arguments raised for the first time on a motion for reconsideration. This failure alone is a sufficient basis for the Court to deny the motion as to Count VIII.

In any case, Zcom's argument fails on the merits. Assuming Zcom could recover nominal damages for such a breach, the Amended Complaint still fails to state a breach of contract claim because it does not allege that Verizon would not have brought suit had it complied with the pre-suit provisions. Though Zcom asserts it need not plead this to state a claim, such an allegation is necessary to show that the damages resulted from the breach. National Market Share, Inc. v. Sterling Nat. Bank, 392 F.3d 520, 525 (2d Cir. 2004) ("Causation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages."). Accordingly, Zcom has failed to "allege that the breach—the failure to give notice and an opportunity to negotiate—caused the alleged damages." In Touch, 2013 WL 2455923 at *20.[4]

II.    Fraud Claims

As the June 4, 2013 Memorandum and Order explains, "the gravamen of the alleged fraud" is that "Verizon never intended to pay out commissions for prepaid activations." In Touch, 2013 WL 2455923 at *27. "Verizon provided instructions regarding the prepaid

---

[4] That Judge Sheridan of the District of New Jersey denied without prejudice Zcom's motion to dismiss the parallel action for failure to comply with the pre-suit notice provisions is not material here. Though Zcom asserts that discovery is necessary to evaluate Count VIII, discovery would not cure the pleading's defect.

activations, which omitted to mention that unless a 'test call' was made a phone would deactivate before the end of the chargeback period. Verizon and its employees encouraged subagents to activate accounts under fictitious names, which would also result in charge backs." Id.

The Court dismissed the fraud claims against Pavlicek and Fiocco because, under a reasonable reading of the complaint, Pavlicek and Fiocco did not play a role in the sale of pre-paid services, and rather, acted only as internal investigators after-the-fact. Thus, they did not make any representations to Zcom about commissions for the prepaid promotion. Zcom again asserts that the complaint alleges Pavlicek and Fiocco participated in Verizon's "scheme" by working with Verizon to cover up its misconduct and fabricate reasons to terminate the Agency Agreement with Zcom. But these acts occurred after the alleged fraud and did nothing themselves to induce Zcom's reliance. Though Zcom insists that complaint alleged (1) the existence of underlying fraud; (2) actual knowledge; and (3) substantial assistance (Reply at 6), it recites the elements of a claim for aiding and abetting fraud. While it is possible Pavlicek and Fiocco are liable in tort, Zcom does not state a claim against them for fraud. Finally, to the extent the Court misunderstood the nature of the fraud claims due to the prolix nature of the pleading, the claims against Pavlicek and Fiocco were also properly dismissed due to Zcom's failure to comply with Rule 8(a), Fed. R. Civ. P.

Though Varghese was purportedly involved in promoting the prepaid activations to Zcom, the Court dismissed the fraud claims asserted against him for failure to comply with Rule 9(b), Fed. R. Civ. P.[5] According to Zcom, the Court overlooked a recent precedent cited in Zcom's papers, Simington v. Lease Fin. Group, LLC, 2012 WL 651130, at *10 (S.D.N.Y. Feb. 28, 2012) (citing Pludeman v. N. Leasing Sys. Inc., 10 N.Y.3d 486, 491-93 (2008)). In Pludeman, the Court of Appeals determined that the fraud claims against the directors and

---

[5] The other defendants did not raise the particularity requirements of Rule 9(b) as a basis for dismissal.

officers of a corporation should withstand a motion to dismiss because multiple sales agents presented plaintiffs with what appeared to be a one page contract that could have covered all material contract terms, but did not present them with three additional contract pages which contained unfavorable contract terms for the plaintiffs.  The Court of Appeals found it significant that "plaintiffs, unrelated to one another, all registered parallel complaints" and relied on the "language, structure and format" of the contract to demonstrate that corporate defendants, and not only individual sales agents, were responsible for the fraud.  Pludeman, 10 N.Y.3d at 493.  In Simington, a case in this district between many of the same parties and with substantially the same facts as Pludeman (see Simington, 2012 WL 651130, at *10 n.10), Judge Forrest concluded that "'[t]he very nature of the scheme, as alleged, [gave] rise to the reasonable inference' that all defendants . . . 'were involved in the fraud,'" and declined to dismiss under Rule 9(b) because facts were "peculiarly" within defendants' knowledge.  Id. at *10.

In contrast to the facts of Simington and Pludeman, the alleged fraud in this case was based on representations made directly to Zcom by employees and agents of Verizon, none of which were specifically attributed to Varghese.  Zcom has not demonstrated that any facts are peculiarly within Varghese's knowledge, as Zcom alleges knowledge of the fraudulent representations made to Zcom.  Moreover, the nature of the scheme, as alleged in the complaint, does not give rise to an inference that Varghese, the "Director of Indirect Distribution for the New York Metro Market," (Am. Compl. ¶ 56.) was necessarily involved.

Notably, Zcom was provided with the opportunity to replead its fraud allegations, but it has failed to do so.

11

III.    Tortious Interference Claims

        The Court dismissed Zcom's claim for tortious interference with existing contracts (Count I) because it did not specify which third-party subagents defendants' induced to breach their contracts with Zcom.  Zcom asserts that the district court opinions cited by this Court are distinguishable because in those cases defendants had no way of identifying who plaintiffs allegedly had business dealings with; unlike in this case, because Zcom provided notice to the defendants that Zcom had relationships with all of its subagents.  Zcom puts forth no precedent, much less controlling precedent, to support this distinction in the case law.

        Zcom also asserts it adequately identified third parties by referring to all of Zcom's subagents.  However, Zcom annexed to the pleading a document signed by the principal of a Zcom subagent, who states he was pressured to "push Prepaid sales using methods [he] was not comfortable with" but was "unwilling" to do so. (Am. Compl. Ex. 14.)  This exhibit belies Zcom's assertions that all subagents were induced to breach their agreements.  The Court dismissed Count I without prejudice, providing Zcom with an opportunity to clarify the pleadings by identifying with greater specificity the breaching subagents.  Zcom has failed to do so.

        The Court's prior ruling did not conclude that Zcom had inadequately pled the intent required to state a claim for tortious interference with existing contracts.  Rather, the inadequacy of the intent allegation was a basis for the Court's dismissal of Zcom's tortious interference with prospective economic relations claims.  Therefore, the Court need not address Zcom's assertion that it adequately alleged defendants "used dishonest, unfair, or improper

means," [6] by (1) making misrepresentations about the prepaid program and compensation Zcom would receive and (2) urging subagents to make fictitious activations.

Zcom contests the Court's dismissal of one of its two tortious interference with prospective economic relations claims (Count V), which alleged that Verizon and its employees wrongfully prevented Zcom from selling its store locations to other Verizon agents. Zcom does not address the Court's observation that the claim appeared to allege "improper performance of the Agency Agreement, not an independently viable tort claim." In Touch, 2013 WL 2455923 at *26 (citing Carvel Corp. v. Noonan, 3 N.Y.3d 182, 193 (2004)). However, Zcom apparently attempts to reframe the claim into one for breach of contract, asserting that Verizon unreasonably and in bad faith withheld its consent, thereby abusing contractual consent provisions. (Am. Compl. Ex. 4 ¶¶ 2.7, 10.8.) As the Court explained in its Memorandum and Order, the complaint did not assert with any clarity a breach of contract claim based on a breach of the implied covenant of good faith and fair dealing.

To state a claim for tortious interference with prospective economic relations, a plaintiff must adequately allege the "wrongful means" element—that defendants' acts were "criminal or independently tortious" or that "defendant[s] [have] engage[d] in conduct for the sole purpose of inflicting intentional harm." Carvel Corp. v. Noonan, 3 N.Y.3d at 190. Zcom takes issue with the Court's assumption that had Verizon consented to the sale of the store locations, it would have continued making monthly residual payments to a buyer. According to Zcom, Verizon acted solely out of malice because its obligation to pay residuals would have ceased at the moment ownership was transferred, and thus, Verizon "actually lost money by its

---

[6] Zcom quotes this language from Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003). This portion of the Carvel case addresses a claim for tortious interference with prospective economic relations, whereas Count I asserted a claim for tortious interference with existing contracts. To state a claim for tortious interference with an existing contract, a plaintiff need not satisfy this heightened culpability requirement which applies to claims for tortious interference with prospective economic relations.

non-approval of Zcom sell-able locations." (Pl. Mem. at 4.) Disregarding its prior assumption, the Court nevertheless concludes Zcom has failed to adequately allege that defendants acted solely out of malice because the Amended Complaint asserted Verizon "profited" by "having all of Zcom's choice locations available to [Verizon], at its discretion to keep or 'gift' to any agent of its sole choice – without paying Zcom." (Am. Compl. ¶ 408.) Zcom's assertions on this motion that there was no economic benefit for Verizon (Pl. Mem. at 24) plainly contradict the allegations in the Amended Complaint.

## CONCLUSION

For the reasons stated herein, the motion for reconsideration (Docket No. 88) is denied.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 18, 2013

14