THE LAW FIRM OF RAVI BATRA, P.C.
The Batra Building
142 Lexington Avenue
New York, New York 10016
(212) 545-1993
(212) 545-0967 (fax)
Ravi Batra (RB 4299)
*Attorneys for In Touch Concepts, Inc. d/b/a Zcom*

UNITED STATES DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK

IN TOUCH CONCEPTS, INC., d/b/a ZCOM,

    *Plaintiff,*     Docket No. 13 Civ. 1419 (PKC)

    -against-

CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS, et. al.,

     *Defendants*

# MEMORANDUM OF LAW IN SUPPORT OF IN TOUCH CONCEPTS d/b/a ZCOM'S MOTION FOR DISQUALIFICATION PURSUANT TO 28 U.S.C. § 455(a)

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT I:    JUDGE CASTEL'S IMPARTIALITY MIGHT
REASONABLY BE QUESTIONED . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

i

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                   *Page(s)*

*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993) . . . . . . . . . . . . . . . 1, 26

*Anderson v. Sheppard*, 856 F.2d 741(6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009) . . . . . . . . . . . . . . . . . . . . . . 24

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
   650 F. Supp. 2d 314 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Doe v. Washington Post Co.*, 2012 WL 3641294 (S.D.N.Y. Aug. 24, 2012) . . . . . . . . . . . 15

*Egiazaryan v. Zalmayev*, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) . . . . . . . . . . . . . . . 16

*Employers Ins. of Wausau v. Fox Ent'mt Group, Inc.*,
   522 F.3d 271(2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Garafola v. United States*, 909 F. Supp. 2d 313 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . 24

*In re Boston's Children First*, 244 F.3d 164 (1st Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23

*In re Murchison*, 349 U.S. 133 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*In re Reassignment of Cases*, 736 F.3d 118 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . 2, 23, 24

*In re School Asbestos Litigation*, 977 F.2d 764 (3d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . 1

*Kernisant v. City of New York*, 225 F.R.D. 422 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . 20

*Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . 13

*LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC.,*
  287 F.3d 279 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Ligon v. City of New York,* — Fed. App'x. —,  2013 WL 5835441
  (2d Cir. Oct. 31, 2013) *superseded in part sub nom.*
  *In re Reassignment of Cases,* 736 F.3d 118 (2d Cir. 2013)  . . . . . . . . . . . . . . . . . . . . 2

*Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847 (1988)  . . . . . . . . . . . . . . .  1, 24

*Liteky v. United States,* 510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Offutt v. United States,* 348 U.S. 11(1954)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23, 25

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Prof'l
  Football Ltd. P'ship,* 2010 WL 286634 (S.D.N.Y. Jan. 15, 2010)
  *aff'd sub nom., Nat'l Union Fire Ins. Co. of Pittsburg, PA v.
  Las Vegas Prof'l Football Ltd. P'ship,* 409 F. App'x 401 (2d Cir. 2010)  . . . . . . . . . 11

*Nichols v. Alley,* 71 F.3d 347 (10th Cir.1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Salahuddin v. Cuomo,* 861 F.2d 40 (2d Cir. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Simmons v. Abruzzo,* 49 F.3d 83 (2d Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*The Rockefeller Univ. v. Ligand Pharm.,* 581 F. Supp.2d 461
  (S.D.N.Y. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Amico,* 486 F.3d 764 (2d Cir. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*United States v. Bayless,* 201 F.3d 116 (2d Cir.2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Carlton,* 534 F.3d 97 (2d Cir. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Dandy,* 998 F.2d 1344 (6th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Lovaglia,* 954 F.2d 811(2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Lynch,* 952 F. Supp. 167 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . .  2

*United States v. Ritter,* 540 F.2d 459 (10th Cir. 1976)  . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Robin,* 553 F.2d 8 (2d Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Whitman*, 209 F.3d 619 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Yousef*, 327 F.3d 56 (2d Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 13-14

## NEW YORK STATE CASES

*ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208 (2011) . . . . . . . . . . . . . . . . . . . . . . . 14

## FEDERAL STATUTES

28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 22, 23, 26

Fed. R. Civ. P. 5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

 Fed. R. Civ. P. 5(b)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 6(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22, 23

Fed. R. Civ. P. 6(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 23

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 9(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 12(a)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 77 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 77(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## LOCAL RULES

L. Civ. R. 6.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

L. R. Div. Bus. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Individual Practices of Judge P. Kevin Castel, 1(A) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Individual Practices of Judge P. Kevin Castel, 1(C) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## SECONDARY SOURCES

C. Wright, A. Miller, M. Kane, Federal Practice and Procedure
   § 1165 (2d ed.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Benjamin N. Cardozo, Mr. Justice Holmes, reprinted in Selected Writings
   of Benjamin Nathan Cardozo  (Margaret E. Hall ed., 1947) . . . . . . . . . . . . . . . . . . 26

Honorable Joseph W. Bellacosa, Benjamin Nathan Cardozo the Teacher,
   16 Cardozo L. Rev. 2415 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted, in conjunction with the

Declaration of Ravi Batra, Esq., in support of the motion of In Touch Concepts d/b/a Zcom

seeking an Order of Hon. P. Kevin Castel, United States District Judge, disqualifying himself

from these consolidated actions pursuant to 28 U.S.C. § 455(a).  Importantly,

> [w]henever a judge's impartiality 'might reasonably be questioned' in a
> proceeding, 28 U.S.C. § 455(a) commands the judge to disqualify himself sua
> sponte in that proceeding. For purposes of § 455(a) disqualification, it does not
> matter whether the district court judge actually harbors any bias against a party
> or the party's counsel. This is so because § 455(a) concerns not only fairness to
> individual litigants, but, equally important, it concerns 'the public's confidence
> in the judiciary, which may be irreparably harmed if a case is allowed to
> proceed before a judge who appears to be tainted..'

*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993) *quoting, In re School*

*Asbestos Litigation*, 977 F.2d 764, 776 (3d Cir.1992) (*citing, Liljeberg v. Health Servs.*

*Acquisition Corp*., 486 U.S. 847, 859-860 (1988)).  It is respectfully submitted that as Judge

Castel's "impartiality might reasonably be questioned," the statutory standard for

disqualification has been met.  Accordingly, vacatur of the decisions and Orders impacted by

such taint is similarly just, proper and equitable.

At the outset, and in the best of faith, Zcom makes no allegation of actual misconduct,

actual bias or actual partiality on behalf of Judge Castel.  However, Zcom respectfully

submits, thaT given the recent flurry of Orders, *see e.g.* D.E. 93, 97, 100, 103-104, causing a

review of the record of proceedings in the Southern District, *in toto*, would cause a

reasonable, independent, disinterested observer, steeped in the facts, to question Judge

Castel's impartiality.  It is, therefore. respectfully submitted that the relief sought herein by

1

Zcom is consistent with the recent amendment to Rule 13 of the Local Rules for the Division of Business Among District Judges ("Rule 13"), effective January 1, 2014.  Moreover, as the Second Circuit has recently held, "as other circuits have correctly noted, 'if the question of whether "§ 455(a) requires disqualification is a close one, the balance tips in favor of recusal'" (*In re Reassignment of Cases*, 736 F.3d 118, 123-124 (2d Cir. 2013) *quoting*, *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir.2001) (*quoting*, *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir.1995) (*and citing, United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir.1993)), it is respectfully submitted that "the interest, and appearance, of fair and impartial administration of justice" (*Ligon v. City of New York*, — Fed. App'x. —,  2013 WL 5835441 (2d Cir. Oct. 31, 2013) *superseded in part sub nom. In re Reassignment of Cases*, *supra*) require a grant of Zcom's instant motion.

## FACTUAL BACKGROUND

Zcom was a party to a longstanding Master Agency agreement with Cellco Partnership d/b/a Verizon Wireless ("Verizon"), wherein Zcom was authorized to market and sell Verizon branded wireless  products and services ((D.E. 37) Amend. Comp. ¶¶ 34, 236). Since October 2010, Zcom was 100% owned by Iminder Singh Dhall (a/k/a Victor Singh and Vikas Singh Dhall), a turbaned religious Sikh, with "genuinely held" religious beliefs,[1] as the late, great Judge John Sprizzo used that term in *United States v. Lynch*, 952 F. Supp. 167 (S.D.N.Y. 1997) (and its famous Footnote 3, referencing "the positive laws of Nazi Germany" as instructing society that the rule of law can sometimes be a false predicate).

---

[1]As a devout Sikh, Vikas' deeply held religious beliefs include avoiding controversy and promoting amicability for a peaceful life.

Moreover, Zcom was also authorized to engage "sub agents." who had been vetted by Verizon, to also market and sell Verizon's products and services in accordance with the agreement *Id*. ¶ ¶ 35, 228.  Zcom was Verizon's largest master agent in the New York metropolitan area (*id*. ¶ 34), albeit, pursuant to an Affidavit of Patrick Devlin, then President of the New York Metro Region of Verizon Wireless, dated January 6, 2012 and submitted in state court proceedings involving Zcom (Batra Dec. Ex. 5), Zcom's "total activations," both pre-paid and post-pay, were "only 0.29%" of all of Verizon's activations nationally in 2010 and Zcom's prepaid activations were "0.039 of annual activations" in 2010.  *Id*. ¶ 13.

As alleged in the Amended Complaint (D.E. 37), Verizon crafted a scheme to engorge itself with profits while intentionally depriving Zcom of its benefits of the bargain, by surreptitiously withholding key information, such that Zcom was defrauded. *See e.g.* Judge Sheridan's draft decision at D.E. 63.  In or about 2008 - 2009, after the business relationship between Zcom and Verizon was again renewed for another 5-year term (Amend. Comp. ¶ 5; Ex. 4), Verizon insisted on heavy promotion of "prepaid" wireless services.  *Id*. ¶ 9.  Large amounts or prepaid activations permitted Verizon to claim large increases in its activations - a critical barometer for success in the wireless industry. Zcom, however, knew that "post-pay" was better than "pre-pay" for Master Agent compensation.

Ultimately, after relying to its detriment on Verizon's mandates and instructions, Zcom learned that the prepaid activation program was a scheme with false promises of compensation. Verizon's scheme had multiple components, all fraudulent, involving the deception of Zcom, its sub agents, and its end user customers.  The wireless phones targeted

3

by Verizon's plan were (a) already owned by existing Verizon customers who already intended to upgrade their phones and discard older units; (b) previously discarded by customers who had already upgraded; and, (c) sold as "pre-loaded" with prepaid "air time" that would, unbeknownst to Zcom or end users, expire if not soon used. *Id.* ¶¶ 5, 9, 19-29, 52-53, 60-62, 70-72, 78-80, 86, 95, 118, 121, 132, 139, 146, 156, 165, 167, 170, 174-176, 182-189, 188-190, 198-199, 204-205, 210-211, 216-217, 219, 251-340, 348, 361, 363-368, 372, 376, 459-462, 496-522, 529-551, 573-610, 616-643, 654-656, 833-835.

Verizon instructed Zcom to market the prepaid wireless services as emergency phones (*i.e.* to be available "just in case"). *Id.* ¶¶ 9, 27, 265, 288-290, 293, 308, 311, 517-519, 589-593. However, Verizon failed to inform Zcom that the wireless instruments activated pursuant to the prepaid program had to be used within 30 days of initial activation, or else they would be deactivated and any commission paid "charged back." Moreover, given that these products were marketed for emergency use, as customers were unaware that they had to use their prepaid emergency phones in order to keep their service active - when such emergencies occurred Zcom's customers discovered that their emergency phones had been deactivated. Thus, all along Verizon intended to dupe Zcom and their customers, by selling a product that would not work as marketed. *Id.* ¶¶ 9, 256, 264-267, 277-280, 286, 291-293, 296, 311, 313-318, 332, 516, 519, 527-551, 578, 627.

Zcom complied with Verizon's directives, including disseminating amongst its "sub agents" the quotas that Verizon mandated be met - with Verizon threatening penalties for noncompliance. *Id.* ¶¶ 268-276, 334-336, 340, 387, 462, 529-537; Exs. 15-20.

Notwithstanding that Zcom was a "good soldier," following Verizon's directives, Verizon nevertheless "charged back" nearly 40% of the compensation for prepaid activations because they were unilaterally deactivated by Verizon, in accordance with their scheme. *Id*. ¶¶ 9, 268-301, 307, 309-311, 321, 331, 363-365, 464, 512-520, 550-552, 577, 583-610.

After internally detecting what appeared to be fraudulent prepaid activations by certain sub agents, Zcom expeditiously reported same to Verizon - not knowing that Verizon was actually a source of the deceit. Only later was Zcom able to determine that Verizon, including defendants Velez and Broomes, coerced Zcom sub agents to make such fictitious activations. Additionally, in order to further demonstrate its zero tolerance policy for dishonesty, in or about November 2009 Zcom implemented a comprehensive anti-prepaid fraud program designed to identify and prevent fraud. *Id*. ¶¶ 327, 337-338, 523, 527; Ex. 13. Thus, while Zcom was going above and beyond to highlight its corporate culture of honesty, Verizon was actually forcing Zcom's sub agents to violate Zcom's own anti-fraud policies. *Id*..

In a blatant attempt to cover up their own misconduct, Verizon opened up what it, in self-serving fashion, described as an internal fraud investigation. Verizon's own corporate security personnel. Bruno Pavlicek and John Fiocco, were given open access to Zcom, while being informed - with evidence - that Verizon was victimizing Zcom. Further proof that the investigation was a sham came when Verizon, in the worst of faith, arbitrarily and capriciously ignored reality and substituted their internal fabrications to falsely blame Zcom

while covering up its own misconduct.  *Id.* ¶¶ 8-9, 25-28, 52-54, 64, 70, 78, 85-88, 95-97, 123, 372-390, 403, 429-437, 554-560, 569, 613, 646, 684, 712, 717-726; Exs. 5-6, 9-13.

Citing pre-paid fraud, in the ultimate effort to silence Zcom, who refused to falsely "confess" guilt for Verizon's own scheme, by July 26, 2011 correspondence, Verizon sought to terminate its agency relationship with Zcom effective January 31, 2012. *Id.* Ex. 5.  By its letter, Verizon claimed that it had "cause" to terminate the agreement, relying on the very prepaid activation scheme that Verizon had promoted and forced participation in.  Verizon also fabricated misdeeds that it fraudulently attributed to Zcom. *Id.*  ¶¶ 6-7, 9, 13, 29, 55, 378, 404-414, 557-560, 804-813; Ex. 12.  Yet, Verizon, without identifying a contractual right to do so, "elected" to terminate Zcom "without cause."  Critically, the contract between Zcom and Verizon was <u>not</u> an at-will contract, as the ¶ 8.8 termination power was <u>not</u> bilateral (*i.e.* Zcom did not have the same contractual right to terminate Verizon). *See e.g. Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314 (S.D.N.Y. 2009).  Hence, the implied covenant of good faith and fair dealing applied to ¶ 8.8, despite the conflict between ¶ 10.2 and ¶¶ 14-14.2.  Indeed, Judge Sheridan celebrated the issue raised by Zcom to be a "novel issue" of New York law.  D.E. 63.

Zcom tried its best to either obtain reconsideration or, alternatively, to mitigate damages in good faith.  Despite Zcom's contractual rights pursuant to ¶¶ 14-14.2 of the master agency agreement, Verizon refused to negotiate and agreed only to consider a sale of Zcom's assets to vetted purchasers.  Zcom sought to sell only to pre-approved resellers of Verizon branded wireless products and services, however Verizon consistently put

6

roadblocks in the way (Amend. Comp. Ex. 7) - not for its own business sake, but rather out of spite. Only on the cusp of the January 31, 2012 deadline did Verizon consent to the sale of a small portion of Zcom's locations (10 out of 71 that could have then been sold to the last buyer). *Id*. ¶¶ 438-457; Ex. 7. Notably, however, after Zcom's termination became effective, many of the stores that Verizon would not let Zcom sell were then offered agency locations directly by Verizon - exposing Verizon's bad faith - non-consent to re-sale by Zcom, causing Zcom additional financial losses - a fact Verizon seems to have taken pleasure in.

As Zcom was working to comply with Verizon's ever changing demands regarding its sale, and after Zcom placed Verizon on actual notice on October 28, 2011, in a communication between Zcom's lead counsel, Ravi Batra, and Verizon's lead counsel, Philip Sellinger, that Zcom would sue Verizon (*id*. Exs. 7-8), Verizon "rushed to the Courthouse" and made an anticipatory declaratory judgment filing in the District of New Jersey (*Cellco Partnership d/b/a Verizon Wireless v. In Touch Concepts d/b/a Zcom Wireless*, 11 Civ. 6493 (PGS) (TJB)). Critically, notwithstanding that the contract was drafted by Verizon and mandates pre-suit notice and negotiation, Verizon ignored same - thus failing to comply with a contractual condition precedent to suit. *Id*. Ex. 4 at §§ 14 - 14.2.

## ARGUMENT

### POINT I

**JUDGE CASTEL'S IMPARTIALITY MIGHT REASONABLY BE QUESTIONED**

After making every effort to mitigate and sell, Zcom was left with no option other than to commence a lawsuit before the contract termination deadline.  Accordingly, on December 28, 2011, Zcom filed an action in Supreme Court, New York County (*In Touch Concepts d/b/a Zcom v. Verizon Communications, Inc., et. al.*, Index # 653635/2011).  On January 3, 2013 Verizon then removed the matter to the Southern District of New York (12 Civ. 00025 (PKC) (JCF)). D.E. 1.  The amended complaint dropped all "class action" allegations and related claims for relief.

On January 20, 2012, Verizon, by counsel, submitted a pre-motion letter seeking leave to move to transfer venue to the District of New Jersey because of the pendency its New Jersey declaratory judgment action .  By that same letter, however, Verizon <u>admitted</u> that its "first-filed" declaratory judgment action was an impermissible anticipatory filing, *i.e.* that "special circumstances" barred application of the "first filed" doctrine, asserting that:

> [o]n November 4, 2011, <u>after</u> Zcom indicated that it would challenge the validity of the without cause termination, Verizon Wireless filed the New Jersey Action for a declaration as to the propriety of the termination.

Batra Dec. Ex. 2 at p. 2 (<u>emphasis added</u>).    Then, because the case was venued in the Southern District, on January 24, 2012 Zcom sought injunctive relief before the assigned jurist, Judge Castel, when, on or about January 17, 2012, Verizon, in bad faith, approved only 10 out of 71 stores for re-sale by Zcom - destroying Zcom's goodwill.

It is now respectfully submitted that from that first appearance, on January 24, 2012, Judge Castel appeared openly hostile to bother with Zcom's claims.   It was not just the Court's rulings, but rather the tenor and tone directed only at Zcom.   This was evident from the Court castigating Zcom for not resorting to litigation sooner - notwithstanding that Zcom was trying to avoid or reduce litigation, while trying to sell whatever stores Verizon would permit.  Batra Dec. Ex. 3 at Tr.  pp. 12:7-13:23; 25:5-22; 26:9-27:3.

While Zcom sought to avoid litigation altogether, and actually succeeded in obtaining Verizon's consent to sell about one-seventh of the locations that the last purchaser was ready, willing and able to purchase, the Court expressed displeasure with Zcom waiting until all of its efforts to mitigate were done before going to Court.  *Id.* pp. 3:16-5:10; 11:6-15:14; 25:5-22; 26:9-27:3.  As the law abhors illicit champerty, so too must it appreciate attempts by a party to avoid litigation at all costs.  Here, Judge Castel appears to have penalized Zcom for exhaustive efforts to resolve issues collaboratively - exactly the type of dispute resolution the Court ought applaud - particularly given that ¶¶ 9-10 of Judge Castel's form Case Management Order refers to settlement and alternative dispute resolution.  *See* http://www. nysd.uscourts.gov/cases/show.php?db=judge_info&id=462, last accessed, January 21, 2014.

Clearly appearing bothered by an Order to Show Cause, which was presented at 9:45 a.m. and Judge Castel took the bench 38 minutes later at 10:23 a.m., rather than a motion, Judge Castel declined to grant injunctive relief[2] - in essence blaming Zcom for not seeking

---

[2]On motion of Zcom, the United States Court of Appeals for the Second Circuit declined to stay Judge Castel's determination pending appeal.

9

such relief sooner - when Zcom, run by a genuinely religious Sikh, preferred agreement or compromise, rather than litigation - exactly what society prefers - a non-litigious litigant, who is not asleep on his rights. Yet, Judge Castel faulting Zcom for not moving sooner with a regular notice of motion rather than via Order to Show Cause, that bothered the Judge's calendar, gave, at the very least, an appearance of partiality against Zcom.

During that same January 24, 2012 hearing, without a formal motion, or even affording Zcom an opportunity to brief the issue, Judge Castel then transferred venue to the District of New Jersey. The whole basis for the transfer was Verizon's pre-motion letter which conceded that its declaratory judgment action was commenced in anticipation of Zcom "challeng[ing] validity of the without cause termination," (Batra Dec. Ex. 2 at p. 2) while Zcom's counsel was holding off on litigation for two reasons. First, Zcom's counsel had assured Verizon's lead counsel, Philip Sellinger, that no case would be filed by Zcom while he was recovering from surgery. *Id.* at pp. 4:18-5:6; 12:7-13:23; 14:17-15:2; 15:11-15. And second, the need to maintain some harmony between Zcom and Verizon was essential if there could be any out-of-court resolution. Nevertheless, Judge Castel Ordered a transfer to the District of New Jersey while being aware that: (a) Verizon admitted that its New Jersey action was an "anticipatory filing" (*id*. at Ex. 2); (b) Zcom's counsel had informed the Court that Zcom assured Verizon's lead counsel, as a professional courtesy, that during a period he was laid up post-orthopaedic surgery that Zcom would not commence suit (*id*. at Ex. 3 at pp. 14:17-15:2; 15:11-15) - and Verizon nevertheless ambushed Zcom by rushing to the Courthouse on November 14, 2011, while Zcom had held back; and, (c) Zcom had sought to

dismiss the New Jersey matter pursuant to Fed. R. Civ. P. 12(b) given Verizon's violation of pre-suit conditions precedent. *Id.* at pp. 4:15-16; 15:15-22. Additionally, Judge Castel, in an anticipatory manner, declared that upon a return to the Southern District of New York that Zcom's case would come to him. *Id.* at p. 29:2-10.

Giving further rise to the appearance of partiality, in addition to not affording Zcom an adequate opportunity to respond to the issue of transfer, during oral argument Judge Castel repeatedly disregarded the anticipatory litigation and forum shopping exceptions to the "first-filed doctrine," notwithstanding that the Court was well aware of them, and Verizon had admitted them in their pre-motion letter. *Id.* at Ex. 2 p. 2. *See e.g. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Prof'l Football Ltd. P'ship*, 2010 WL 286634 (S.D.N.Y. Jan. 15, 2010) (Castel, J.) *aff'd sub nom.*, *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof'l Football Ltd. P'ship*, 409 F. App'x 401 (2d Cir. 2010); *The Rockefeller Univ. v. Ligand Pharm.*, 581 F. Supp. 2d 461 (S.D.N.Y. 2008) (Castel, J.) *citing, Employers Ins. of Wausau v. Fox Ent'mt Group, Inc.*, 522 F.3d 271, 274-276 (2d Cir.2008).

It is respectfully submitted that a reasonable disinterested outside observer, steeped in the facts, considering Judge Castel's twin rulings on January 24, 2012 could reasonably conclude that Judge Castel appeared partial to Verizon and hostile to Zcom by punishing Zcom for Zcom's filing of an Order to Show Cause, rather than a Notice of Motion, by imposing an inapplicable first-filed doctrine transfer, so that Zcom would be prejudiced by going on a wild goose chase, lose precious time and even more precious resources in fighting a legal battle Zcom had already won with Verizon's pre-motion letter of January 20, 2012

11

(Batra Dec. Ex. 2 at p. 2 ), yet more than a year and limited financial resources were spent on a preordained inapplicability of the first-filed doctrine.  Disturbingly, Judge Castel's improper transfer disregarded controlling principles that Judge Castel had issued prior decisions on.  That Zcom was a re-transfer from Judge Sheridan does not eliminate the severe prejudice to Zcom inflicted by Judge Castel's apparent punishment of Zcom for filing an Order to Show Cause rather than a notice of motion, as Zcom lost a large part of its limited financial resources in an unnecessary legal battle.

Thereafter, upon transfer to New Jersey, District Judge Peter Sheridan had oral argument on Zcom's motion to dismiss and was unhappy with Verizon's ambush of Zcom with its declaratory judgment action.  Judge Sheridan declined to dismiss on Verizon's amended pleadings, amended to now falsely assert pre-suit compliance with conditions precedent in accordance with Fed. R. Civ. P. 9(c), holding that there had to be "some discovery" on the issue of compliance with pre-suit conditions.  Verizon and others moved to dismiss Zcom's then amended complaint in New Jersey.  After having oral argument on February 19, 2013 and Zcom's reliance on Judge Rakoff's decision in *Compania Embotelladora Del Pacifico, S.A., supra,* Judge Sheridan determined that the matters properly belonged in New York and transferred all of the cases to the Southern District. Notably, in his draft decision of February 26, 2013, Judge Sheridan demolished the first-filed doctrine while specifically noting that with respect to the implied covenant of good faith and fair dealing applying to the non-at-will contract, Zcom had raised a "novel issue" of New York law.  D.E. 63.

12

Upon the return of Zcom's case to the Southern District, Judge Castel required letter briefs on whether the District Court was obliged to maintain jurisdiction of the action, or whether it could remand to New York County Supreme Court. Zcom candidly replied that the Southern District was not obligated to maintain jurisdiction over its own case; however, given that Verizon's anticipatory declaratory judgment action was commenced in federal court, it could not be remanded. D.E. 84.  Curiously, Judge Castel bifurcated supplemental jurisdiction and retained jurisdiction as to all of the Verizon defendants, while remanding claims involving other defendants, notwithstanding the interrelated claims.  D.E. 87.  In fact, given the remand, Zcom's case also ought to have been remanded given the importance of the pleading standard differential in New York State Court versus federal court post-*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) - a clear, apparent additional punishment of Zcom by Judge Castel.  It is respectfully submitted that this further evidenced an apparent  bias against Zcom and partiality towards Verizon.  When, as here, a

> district court is [ ] presented with the discretionary decision whether to decline
> supplemental jurisdiction over [ ]state law claims [ ] it must 'balance[ ] the
> traditional "values of judicial economy, convenience, fairness, and comity'" in
> exercising its discretion.

*Williams v. Citigroup Inc.*, 659 F.3d 208, 215, n.4 (2d Cir. 2011) *quoting, Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (*quoting, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  The Second Circuit further held that

> [t]he district court's assessment of these factors should, in our view, involve
> consideration of the pleading standard that a New York court would apply in
> evaluating the sufficiency of [plaintiff's] complaint. It appears to us that this
> standard is more lenient than the 'plausibility' standard applicable in federal
> courts, and at the very least that New York's state courts have not yet adopted

13

> the Iqbal/Twombly pleading standard [ ]. To the extent that [plaintiff] would
> have a better chance of pleading viable state law claims under the standard that
> New York's courts have chosen, we question whether the values of fairness
> and comity would be served by preventing [plaintiff] from pursuing those
> claims in that forum.

*Williams*, *supra*, (*comparing Iqbal*, *supra*, with *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17

N.Y.3d 208 (2011)).  Therefore, here, where New York State Supreme Court was

jurisdictionally capable of hearing Zcom's claims against all defendants, and Zcom

commenced this very action in that State court, a reasonable outsider considering Judge

Castel's <u>bifurcated</u> remand determination to retain jurisdiction only over the claims against

the Verizon-related defendants and therefore holding Zcom's New York State law claims to a

federal pleading standard, could reasonably view this as yet a further example of punishment

of Zcom by disparate treatment wherein the Court was biased against Zcom and partial to

Verizon.   Judge Castel's denial of remanding all of Zcom's case appears as an unfair and

unbalanced punishment to Zcom.

Thereafter, by Order of June 4, 2013 (D.E. 87), Judge Castel dismissed much of

Zcom's amended complaint.   Critically, while the Order was "filed" on June 4, transmission

of the Order to Zcom's counsel, after its "entry" was not accomplished until June 5, 2013.

Batra Dec. Ex. 4.  Notably, it is respectfully submitted that Judge Castel's apparent hostility

to Zcom was further evidenced by his dismissal Order, wherein the Court indicated that

"[b]ut for the procedural history of this case, the Court would exercise its authority to dismiss

this prolix pleading."  D.E. 87 p.1.  To support this position, Judge Castel relied upon, *inter*

*alia*, *Simmons v. Abruzzo*, 49 F.3d 83 (2d Cir. 1995); however, the District Court disregarded

14

the critical portion of the Second Circuit's holding, that "'[d]ismissal, however, is usually

reserved for those cases in which the complaint is so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, is well disguised.'" *Simmons*, 49 F.3d

83, 86-87 *quoting*, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Similarly, Judge

Castel also relied upon *Doe v. Washington Post Co.*, 2012 WL 3641294 (S.D.N.Y. Aug. 24,

2012), where the District Court relied upon the same language from *Salahddin* as did the

*Simmons* Court.

Moreover, in *Doe*, the District Court was confronted with "rambling and incoherent"

claims that "a named defendant attempting to respond would struggle to comprehend." *Id*.

Moreover, the Doe Court further concluded that the plaintiff's "claims strain credulity, by a

wide margin" and that the "Complaint so lacks traditional logic as to go beyond mere

speculation, and pass into the realm of fantasy." *Id*..  Thus, it is respectfully submitted like

*Simmons*, *Doe* too was a far cry from Zcom's pleading - nevertheless, in all of the cases

relied upon by Judge Castel on this issue the Court granted plaintiff an outright leave to

amend - not to seek leave to amend.[3]

Unlike the Courts in *Simmons*, *Doe* and *Merrill Lynch*, in Judge Castel's Order he did

<u>not</u> grant leave to amend.  To the contrary, the District Court mandated that Zcom move for

leave to amend (not amend) within 20 days of the Order, with a pre-set arbitrary page limit of

30 pages in the amended pleading, notwithstanding the complexity of the misconduct alleged

---

[3]Judge Castel also cited to *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218
F.R.D. 76, 79 (S.D.N.Y. 2003); however, there the Court was confronted wit numerous paragraphs of
pleadings wholly unrelated to the issues in the litigation.  Even under those circumstances, like the
*Simmons* and *Doe* Courts, the Court <u>outright granted leave to amend</u>.

against the multi-billion dollar multinational Verizon.  Judge Castel's denial of leave to amend speaks of an apparent hostility to Zcom!

It is respectfully submitted that the District Court's criticism of Zcom's necessarily detailed pleading was misplaced and also gives rise to an appearance of partiality.  Zcom is confronted with the requirement, *inter alia*, to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)) while at the same time having to "state with particularity the circumstances constituting fraud or mistake" (Fed. R. Civ. P. 9(b)) all while putting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Egiazaryan v. Zalmayev*, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) (Castel, J.).  It is Verizon who orchestrated the convoluted fraud and deceit, while Zcom is essentially being faulted for having to explain it so that it can be understood.  Verizon's all-critical "course of performance" letter of October 19, 2011 (Amend Comp. [D.E. 37] at Ex. 9), post July 26, 2011 termination, denies Zcom its contractual indemnification on the basis that Zcom was terminated for cause, and is hence, proof-positive of Zcom's valid breach of contract claim.  Judge Castel, however, with apparent callousness, swept this critical evidence under the proverbial rug in a bland Footnote 3 to his Order of November 18, 2013 denying reconsideration (D.E. 93), preventing public comprehension, and public disagreement, if any, of the Judge's core error and apparent partiality.

On June 14, 2013, Zcom sent an email to defense counsel seeking a stipulation that Zcom's time to re-plead occur after the determination of Zcom's then-to be filed reconsideration motion. In response to this e-mail Verizon indicated it took no position, while then defendant Tom Verghese did not respond.  Thereafter, by timely motion filed June 18, 2013, Zcom sought reconsideration of the dismissal Order pursuant to, *inter alia*, L. Civ. R. 6.1 (D.E. 88-89).  Then, on June 24, 2013, Zcom's lead counsel contacted Judge Castel's Chambers and inquired about delay of the motion for leave to amend, given the reconsideration motion.  Thereafter, on June 26, 2013, in compliance with the directives of Judge Castel's Chambers, Zcom's lead counsel wrote to the Court formally seeking an enlargement of time to move to amend.  *See* D.E. 95-1, 96-1.  In accordance with Judge Castel's Individual Practice 1(C), Zcom's formal request indicated the June 4, 2013 date of the underlying dismissal Order, that the dismissal Order afforded 20 days to move to amend and that an enlargement was sought given the pendency of Zcom's motion for reconsideration.  Zcom's formal application of June 26 was never objected to by any party, was never ruled upon by the District Court while reconsideration was *sub judice*, and there was never even a hint of prejudice by any party - as there was and is none.

On November 18, 2013 Judge Castel issued an Order denying Zcom's motion for reconsideration (D.E. 93), notwithstanding that the Court conceded that an assumption it made in the dismissal Order was in error.  Furthermore, in his Order denying reconsideration, Judge Castel repeatedly chastised Zcom for not amending its pleading, while disregarding the

good faith motion to reconsider, telephone call to Chambers on June 24, 2013 and formal request for enlargement pending since June 26, 2013.

In expeditious response to Judge Castel's November 18 Order, by letter motion of November 19, 2013 (D.E. 95) as amended November 20, 2013 (D.E. 96), Zcom requested leave to re-plead - consistent with its then still undecided June 26, 2013 application, given the liberality of Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave when justice so requires").   Only then, on November 20, 2013 (D.E. 97), did the District Court address Zcom's application of June 26; however, Judge Castel not only denied any relief to Zcom, with apparent hostility, but also openly castigated Zcom for what, it is respectfully submitted, was either a misapprehension or disregard of the law and facts by the Court.  In either event, to an outside viewer objectively considering the scenario, it is respectfully submitted that Judge Castel appeared unfair, unbalanced and partial against Zcom and apparently causing injury to the institutional interests of justice.

Specifically Judge Castel found that leave for Zcom to amend would not be granted because, in substance,  Fed. R. Civ. P. 6(b)(1)(B) required Zcom to show "excusable neglect" as  "an out-of-time party seeking an extension."   This, notwithstanding that even as the facts were then viewed by the Court, Zcom's <u>formal</u> request came a <u>mere</u> 2 days after the Court mistakenly believed the time to move to amend had expired and Zcom had not ignored the Court's rulings but rather had made a detailed motion to reconsider, had contacted Chambers and did formally seek an enlargement on June 26, 2013, approximately 5 months ***prior*** to the District Court's determination.  Furthermore, notwithstanding that it was Verizon who had

sought and successfully fought to keep a global discovery stay imposed on all actions while the matters were pending in the District of New Jersey (D.E. 34, 50; *see also* 13 Civ. 1418 D.E. 46-54), when Judge Castel finally lifted such global stays on November 20, 2013 (D.E. 97), he set an incredibly aggressive fact discovery schedule that apparently further prejudices Zcom more.

It is respectfully submitted that Zcom's June 26 letter request was nevertheless timely, and the District Court may reasonably be viewed as biased against Zcom by virtue of the tenor and tone of its conclusions to the contrary. Specifically, while Judge Castel apparently issued the dismissal Order which directed that a motion for leave to amend had to be made within 20 days on June 4, 2013, same was not entered and served by the Clerk of the Court via ECF, in accordance with Fed. R. Civ. P. 77[4] until June 5, 2013 (Batra Dec. Ex. 4). Accordingly, Zcom could not be aware of the Order until its June 5, 2013 entry and in computing the 20 days initially allotted to move to amend one must "exclude the day of the event that triggers the period[.]" Fed. R. Civ. P. 6(a)(1)(A).

---

[4]"Immediately after entering an order or judgment, the clerk must serve notice of the entry, as provided in Rule 5(b), on each party who is not in default for failing to appear." Fed. R. Civ. P. 77(d)(1).

Moreover, in pertinent part, Fed. R. Civ. P. 5(b) provides that "[i]f a party is represented by an attorney, service under this rule must be made on the attorney . . . A paper is served under this rule by. . . sending it by electronic means if the person consented in writing--in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served." Fed. R. Civ. P. 5(b)(2)(E).

It is therefore respectfully submitted that the earliest the "clock" began to run was June 6, 2013 and accordingly when Zcom initially applied for an enlargement by way of the June 24, 2013 telephone call to Chambers, Zcom had acted timely. Thus, the June 26, 2013 writing, at the direction of Chambers, following up on the June 24 phone call, reflected a timely application for an enlargement pursuant to Fed. R. Civ. P. 6(b)(1)(A). Given that "'an application for the enlargement of time under Rule 6(b)(1) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party'" (*Kernisant v. City of New York*, 225 F.R.D. 422, 431 (E.D.N.Y. 2005) *quoting*, C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 1165 (2d ed.1986)), it is respectfully submitted that given no objection by any party and in the complete absence of any prejudice, Judge Castel's refusal to enlarge - nearly 5 months after Zcom's request was made - could be viewed by a reasonable objective observer as another instance of partiality against Zcom. This is particularly so where, as here, the Court never directly addressed the June 26, 2013 letter and only referred to it after it was appended to further correspondence on November 19 - 20, 2013. This is an apparent example of judicial "gotcha" to the prejudice of Zcom, which further permits a reasonable outside viewer to interpret same as bias against Zcom and partiality for Verizon.

The appearance of partiality in favor of Verizon and to the complete detriment of Zcom was painfully exemplified by Judge Castel's Order of November 26, 2013, docketed on November 27, 2013 (D.E. 100), wherein the District Court, in violation of its own Individual Practice 1(A), granted Verizon's after-hours application (D.E. 98) for additional time to

answer Zcom's First Amended Complaint - when their time to answer had expired more than

140 days prior.[5]  In stark contrast, Judge Castel did <u>not</u> require any showing of "excusable

neglect"from Verizon in accordance with Fed. R. Civ. P. 6(b)(1)(B) - notwithstanding

disparately holding Zcom to that more stringent standard.  Moreover, Judge Castel granted

the Verizon defendants even <u>more</u> time than they collectively asked for.  It is respectfully

submitted that to an objective person viewing these circumstances could reasonable view

Judge Castel as having a double-standard for treatment of the parties, in favor of the Verizon

defendants, and to the detriment of Zcom.[6]

    Thereafter, on November 27, 2013 (D.E. 101), Zcom again objected to the apparent

unfair and divergent standards being applied by the Court to the detriment of Zcom.    On

December 2, 2013  the District Court disregarded Zcom's good faith efforts beginning with

its reconsideration motion, communications with Chambers on June 24, 2013 and letter

---

[5]Pursuant to Fed. R. Civ. P. 6(a)(1)(A) the 14 day period for which Verizon had to answer the complaint began on June 6, 2013 and expired on June 20, 2013.  As Verizon's first, and only, application for an enlargement of time was not made until November 26, 2013, <u>it was 160 days late</u>.

[6]Zcom opposed Verizon's belated request and alerted the District Court to the appearance of a double-standard (D.E.99); however, it appeared that the Court disregarded Zcom's lightning fast opposition which was filed on November 26, 2013 at 7:18 p.m., within 1 hour and 45 minutes of the Verizon defendants' belated application.

Notably, Judge Castel's endorsed Order contains a handwritten date of November 26 notwithstanding that it was filed on November 27, 2013.  Either that handwritten date was incorrect or the District Court disregarded the spirit of its own Individual Practice 1(A) indicating that "[a]s a general matter, letters filed via ECF are reviewed by the Court on the business day after they have been filed."  In any event, Judge Castel did not address Zcom's June 26, 2013 application for an enlargement, and then when same was appended to letter motions of November 19 - 20, 2013 (D.E. 95-1, 96-1), the Court suggested that Zcom acted belatedly.  However, when Verizon made an application nearly 5 months after its time to answer expired, the same Court acted immediately, to the benefit of Verizon.  This, it is respectfully submitted, gives a further appearance of bias against Zcom.

application of June 26, 2013 finding that a 140 day delay by Verizon in seeking an after-hours enlargement of time to answer, notwithstanding the 14 day deadline imposed by Fed. R. Civ. P. 12(a)(4)(A) - and no pre-expiration request or showing of "excusable neglect" should be treated far more benevolently  than Zcom with what the District Court improvidently perceived as a 2 day delay in seeking an enlargement of time to move to amend, holding that "[it] would be a stark departure from precedent to hold that a party may appropriate to itself a stay of compliance with a judicial order by the unilateral act of filing a motion to reconsider."  D.E. 103.  Incredulous, on these facts.

It appears that the District Court disregarded the Clerk's delay in entering the June 4, 2013 Order until June 5, 2013, the exclusion of the date of entry of the Order from the 20 day "clock" pursuant to Fed. R. Civ. P. 6(a)(1)(A), Zcom's timely communication with Chambers on June 24, 2013, Zcom's timely application for an enlargement of time made on June 26, 2013, and the "good cause" inherent in Zcom having made a good faith based reconsideration motion which, if granted, even in part, would prospectively have altered (or even eliminated) any need to re-plead - and the Court's "assumption" was wrong.

Sadly, Zcom has well met the standard for disqualification includes circumstances "in which [a Judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  Given the aggregate of the disparate treatment of Zcom by Judge Castel in these proceedings, beginning with apparent animosity on the record followed by transfer to New Jersey, all on January 24, 2012, bifurcated remand; denial of amendment; denial of leave to amend; denial of leave to seek to amend; an artificially small 30 page limit; disregard of Zcom's

22

applications for enlargements of time for leave to amend; the application of harsher and inapplicable standards of review upon Zcom (*i.e.* Fed. R. Civ. P. 6(b)(1)(A) versus Fed. R. Civ. P. 6(b)(1)(B)) while at the same time granting Verizon more generous time-relief than they belatedly sought - after <u>being in default</u>, while denying any to Zcom, and not requiring Verizon to demonstrate "excusable neglect" - when the purported basis for their application for enlargement (waiting until the pleadings were set after all related motion practice) made more than 140 days after expiration of the 14 day deadline, was <u>identical</u> to the reason Zcom timely submitted for an enlargement as discussed with Chambers on June 24, 2013 and formally made on June 26, 2013 - which was ultimately denied by the District Court on November 20, 2013 (D.E. 97).

The controlling statute is mandatory in nature, providing that a federal judge "<u>shall</u> disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a) (<u>emphasis added</u>). The Second Circuit recently held that § 455(a) "embodies the principle that 'to perform its high function in the best way justice <u>must</u> satisfy the <u>appearance</u> of justice.'" *In re Reassignment of Cases*, 736 F.3d at 123 *quoting*, *In re Murchison*, 349 U.S. 133, 136 (1955) (*quoting, Offutt v. United States*, 348 U.S. 11, 14 (1954)).   Notably, in *Murchison* the Supreme Court further held that "[s]uch a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *Id.*.

"The goal of section 455(a) is to avoid not only partiality but also the appearance of

partiality." *In re Reassignment of Cases*, 736 F.3d at 123 *citing*, *Liljeberg*, 486 U.S. at 860.

Moreover, the Second Circuit "sitting *en banc*, has stated that there exists 'unusual

circumstances where both for the judge's sake and the appearance of justice, an assignment to

a different judge is salutary and in the public interest, especially as it minimizes even a

suspicion of partiality.'" *Id. quoting*, *United States v. Robin*, 553 F.2d 8, 9–10 (2d Cir.1977)

(*en banc*).  It is respectfully submitted that this is such a circumstance.

To be clear, actual bias or prejudice is not a requirement for disqualification.  To the

contrary, "what matters is not the reality of bias or prejudice but its appearance."  *Liteky v.*

*United States*, 510 U.S. 540, 548 (1994).   Importantly, a "federal judge is obligated to take

such action [of disqualification] if the circumstances indicate that the judge's 'impartiality

might reasonably be questioned.'"  *Garafola v. United States*, 909 F. Supp. 2d 313, 333-334

(S.D.N.Y. 2012) *quoting*, *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir.2000) (*quoting*,

28 U.S.C. § 455(a).  As is the case here,

> '[t]he appearance of partiality is created where "an objective, disinterested
> observer fully informed of the underlying facts, [would] entertain significant
> doubt that justice would be done absent recusal," or alternatively, whether "a
> reasonable person, knowing all the facts," would question the judge's
> impartiality.'

*Bayless*, *quoting*, *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir.2003) (*quoting*, *United*

*States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992)).  As "objective standards may also

require recusal whether or not actual bias exists or can be proved" (*Caperton v. A.T. Massey*

*Coal Co., Inc.*, 556 U.S. 868, 886 (2009)) disqualification is required here because the

applicable "test deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary." *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007).

It is respectfully submitted that the aggregate of Judge Castel's actions in this instant litigation "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.[7] Furthermore, where, as here, there is a "reasonable likelihood" that the case will not be "tried with the impartiality that litigants have a right to expect in a United States district court,"even when reluctant to do so, " the interests of justice require that the cause be tried by another judge[.]" *United States v. Ritter*, 540 F.2d 459, 464 (10th Cir. 1976). The Tenth Circuit went further in *Ritter*, noting that its "action is not to be construed as questioning either the integrity or sincerity of the judge. It is a practical action which seeks to avoid stress, trouble and complications in the upcoming trial." *Id..*

---

[7]Zcom concedes that standing alone "a judge's comments during a proceeding that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) *quoting*, *Liteky*, 510 U.S. at 555. However, when, as here, the record as a whole "demonstrate[s] 'such a high degree of favoritism or antagonism as to make fair judgment impossible'" or "a 'predisposition ... so extreme as to display clear inability to render fair judgment'" recusal is warranted. *Carlton*, 534 F.3d at 100 *quoting*, *Liteky*, 510 U.S. at 551, 555. However, when a Judge's comments create even the impression that the Court is not impartial, even if that impression is incorrect, recusal is appropriate in the interests of justice. *United States v. Whitman*, 209 F.3d 619, 625 (6th Cir. 2000) *citing*, *Anderson v. Sheppard*, 856 F.2d 741, 747 (6th Cir. 1988) (*quoting*, *In re Murchison*, 349 U.S. at 136 (*quoting*, *Offutt*, 348 U.S. 11)).

Given Verizon's contention that all issues in these now consolidated actions are subject to a jury waiver (D.E. 122 ¶ 2), disqualification is even more critical.   Importantly, while disqualification under 28 U.S.C. § 455(a) is mandatory when a Judge's "impartiality might reasonably be questioned," under circumstances "[w]hen the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced." *Alexander*, 10 F.3d at 166.  *See also  LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC.*, 287 F.3d 279, 292 (3d Cir. 2002).

## CONCLUSION

It is respectfully submitted that where, as here, the record as a whole could reasonably be viewed by a disinterested, but thoughtful, outsider, fully aware of all of the facts and circumstances, as appearing to evidence bias against Zcom and partiality in favor of Verizon, recusal is mandated pursuant to 28 U.S.C. § 455(a).

Accordingly, it is respectfully submitted that Judge Castel must disqualify himself, honor Holmes' "trembling hope," [8] the decisions and Orders tainted by the appearance, or even perceived appearance, of partiality, must be vacated: to wit: the June 4, 2013 Order (D.E. 87), the November 18, 2013 Order (D.E. 93), the November 20, 2013 Order (D.E. 97) , the November 27, 2013 Order (D.E. 100), the December 2, 2013 Order (D.E. 103) and the December 3, 2014 Order (D.E. 104), Zcom's case remanded to the Supreme Court of the State of New York, New York County.  Or, in the alternative, it is respectfully submitted that

---

[8]*See* Honorable Joseph W. Bellacosa, Benjamin Nathan Cardozo the Teacher, 16 Cardozo L. Rev. 2415, 2433 (1995) citing, Benjamin N. Cardozo, Mr. Justice Holmes, reprinted in Selected Writings of Benjamin Nathan Cardozo at 86 (Margaret E. Hall ed., 1947).

26

Judge Castel must disqualify himself, vacate the June 4, 2013 Order (D.E. 87), the November

18, 2013 Order (D.E. 93), the November 20, 2013 Order denying Zcom leave to re-plead and

establishing an apparently aggressive discovery schedule (D.E. 97) while substituting an

Order granting leave without a page limitation.

Wherefore, it is respectfully requested that Zcom's instant motion be granted in its

entirety.

Respectfully submitted,

THE LAW FIRM OF RAVI BATRA, P.C.

Ravi Batra, Esq. (RB 4299)
*Attorneys for In Touch Concepts, Inc. d/b/a Zcom*
The Batra Building
142 Lexington Avenue
New York, NY 10016
(212) 545-1993; Fax: (212) 545-0967
E-Mail: ravi@ravibatralaw.com