THE LAW FIRM OF RAVI BATRA, P.C.
The Batra Building
142 Lexington Avenue
New York, New York 10016
(212) 545-1993
(212) 545-0967 (fax)
Ravi Batra (RB 4299)
E-Mail: ravi@ravibatralaw.com
*Attorneys for In Touch Concepts, Inc. d/b/a Zcom*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN TOUCH CONCEPTS, INC., d/b/a ZCOM,

*Plaintiff,*

-against-

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, et. al.,

*Defendants*

---

Docket No. 13 Civ. 1419 (PKC)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF IN TOUCH CONCEPTS d/b/a ZCOM'S MOTION FOR DISQUALIFICATION PURSUANT TO 28 U.S.C. § 455(a)

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

PRELIMINARY STATEMENT: Apparent Partiality Due to Disparate Treatment . . . . . . . . . . 1

REPLY ARGUMENT . . . . . . . . . . 2

I. The Appearance of Partiality, with Obvious *Litkey* "Predisposition," Warrants Disqualification Pursuant to 28 U.S.C. § 455(a) . . . . . . . . . . 2

II. Judge Castel's "High Degree of Favoritism" Toward Verizon "Or Antagonism" Toward Zcom Resulted in Judge Castel Converting Zcom's Rule 6(b)(1)(A) Application into One Pursuant to Rule 6(b)(1)(B) While Converting Verizon's Woefully Untimely Rule 6(b)(1)(B) Application into One Pursuant to Rule 6(b)(1)(A) . . . . . . . . . . 4

III. Zcom's Motion for Disqualification Was Timely Made after Obtaining "Knowledge of the Facts" Warranting its Motion . . . . . . . . . . 6

IV. Zcom Is Not "Judge Shopping" - After "Embracing" Judge Castel . . . . . . . . . . 8

V. Vacatur of Prior Orders and Remand to State Court Is Within the Scope of Relief Zcom Received Authority to Move for . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**FEDERAL CASES** ***Page(s)***

*Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326 (2d Cir. 1987) . . . . . . . . 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . 9

*Canino v. Barclays Bank, PLC*, 1998 WL 7219 (S.D.N.Y. Jan. 7, 1998) . . . . . . . . 10

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120 (2d Cir. 2003) . . . . . . . . 2, 3

*Diamondstone v. Macaluso*, 148 F.3d 113 (2d Cir.1998) . . . . . . . . 8

*Edwards v. Horn*, 2011 WL 569872 (S.D.N.Y. Feb. 9, 2011) . . . . . . . . 7

*Holmes v. NBC/GE*, 925 F. Supp. 198 (S.D.N.Y. 1996) . . . . . . . . 6

*In Re: Chevron*, 121 F.3d 163 (5th Cir.1997) . . . . . . . . 3

*In re Murchison*, 349 U.S. 133 (1955) . . . . . . . . 2, 4

*In re Sch. Asbestos Litig.*, 977 F.2d 764 (3d Cir. 1992) . . . . . . . . 4

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) . . . . . . . . 2-3

*Liteky v. U.S.*, 510 U.S. 540 (1994) . . . . . . . . *passim*

*Lyell v. Renico*, 470 F.3d 1177 (6th Cir. 2006) . . . . . . . . 5

*New York City Dev. Corp. v. Hart*, 796 F.2d 976 (7th Cir. 1986) . . . . . . . . 3

*Offutt v. U.S.*, 348 U.S. 11 (1954) . . . . . . . . 4

*Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451 (1952) . . . . . . . . 2

*Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343 (5th Cir. 2000) . . . . . . . . 3

*S.E.C. v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013) . . . . . . . . 8

*Schiff v. U.S.*, 919 F.2d 830 (2d Cir. 1990) . . . . . . . . 7

*U.S. v. Apple Inc.*, — F.Supp.2d —, 2014 WL 171159 (S.D.N.Y. Jan. 16, 2014) . . . . . 8

*U.S. v. Bayless*, 201 F.3d 116 (2d Cir.2000) . . . . . 8

*U.S. v. Lovaglia*, 954 F.2d 811(2d Cir.1992) . . . . . 8

*U.S. v. Tucker*, 78 F.3d 1313 (8th Cir. 1996) . . . . . 3

*U.S. v. Wolfson*, 558 F.2d 59 (2d Cir.1977) . . . . . 7

*U.S. v. Yonkers Bd. of Educ.*, 946 F.2d 180 (2d Cir. 1991) . . . . . 6

*U.S. v. Yousef*, 327 F.3d 56 (2d Cir.2003) . . . . . 8

*Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011) . . . . . 8

*Withrow v. Larkin*, 421 U.S. 35 (1975) . . . . . 2

**FEDERAL STATUTES**

28 U.S.C. § 455(a) . . . . . *passim*

Fed. R. Civ. P. 6(b)(1)(A) . . . . . 1, 4, 5

Fed. R. Civ. P. 6(b)(1)(B) . . . . . 1, 4, 5

Fed. R. Civ. P. 12(a)(4)(A) . . . . . 5

Fed. R. Civ. P. 12(b) . . . . . 5

Fed. R. Civ. P. 12(e) . . . . . 5

**SECONDARY SOURCES**

Flout." *Merriam-Webster.com*. 2014. *http://www.merriam-webster.com/dictionary/flout* (7 Feb. 2014). . . . . . 4

**PRELIMINARY STATEMENT: Apparent Partiality Due to Disparate Treatment**

This reply memorandum of law is respectfully submitted by plaintiff In Touch Concepts d/b/a Zcom ("Zcom") in further support of its motion, pursuant to 28 U.S.C. § 455(a), seeking disqualification of Hon. P. Kevin Castel, from these consolidated actions. In opposition to Zcom's motion, the defendants (collectively "Verizon") do not offer substance and instead make the false claims that Zcom is judge shopping or seeking a "do-over." Frankly, the procedural history of these matters that Verizon itself relies upon is actually fatal to its misguided assertions.

Zcom, honored the Court's June 4, 2013 Order by timely seeking an enlargement in accordance with Fed. R. Civ. P. 6(b)(1)(A) and was held to be in default versus Verizon, who did not answer the un-amended First Amended Complaint, hid its default while actually seeking additional time - which required adherence to the Fed. R. Civ. P. 6(b)(1)(B) standard of "excusable neglect," and was nevertheless over-rewarded by Judge Castel. Judge Castel, with a *Litkey* "predisposition" - proved by his apparent violation of his own Individual Practice 1(A) and Zcom's core adversarial rights. (Zcom has no evidence that Judge Castel read Zcom's lightning fast opposition letter of November 26, 2013 (DE 99) and retaliated by back-dating his Order (DE 100)). Judge Castel's disparate treatment of Zcom's Rule 6(b)(1)(A) application versus Verizon's untimely Rule 6(b)(1)(B) application, with a *Litkey* "predisposition," conclusively requires § 455(a) disqualification. That Verizon relies upon the agency agreement's no-jury-trial clause as controlling all aspects of the parties' disputes only compels the necessity of § 455(a) disqualification.

## REPLY ARGUMENT

### I. The Appearance of Partiality, with Obvious *Litkey* "Predisposition," Warrants Disqualification Pursuant to 28 U.S.C. § 455(a)

In recusing himself from consideration of a matter then pending before the Supreme Court, Justice Frankfurther set forth principles that ought guide this Honorable Court, stating, in pertinent part, that

> [t]he judicial process demands that a judge move within the framework of relevant legal rules and the covenanted modes of thought for ascertaining them. He must think dispassionately and submerge private feeling on every aspect of a case. There is a good deal of shallow talk that the judicial robe does not change the man within it. It does. The fact is that on the whole judges do lay aside private views in discharging their judicial functions. This is achieved through training, professional habits, self-discipline and that fortunate alchemy by which men are loyal to the obligation with which they are entrusted. But it is also true that reason cannot control the subconscious influence of feelings of which it is unaware. When there is ground for believing that such unconsious (*sic*) feelings may operate in the ultimate judgment, or may not unfairly lead others to believe they are operating, judges recuse themselves. They do not sit in judgment. They do this for a variety of reasons. The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact.

*Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451 (1952) (*statement of Justice Frankfurter*).

It is well settled that "[n]ot only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) *quoting*, *In re Murchison*, 349 U.S. 133, 136 (1955). The Second Circuit has made clear that § 455(a) "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown. The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003) *citing*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S.

847, 860 (1988).[1] *See also New York City Dev. Corp. v. Hart*, 796 F.2d 976, 980 (7th Cir. 1986) ("[t]he inquiry is objective, from the point of view of a reasonable person with access to all of the facts"). Moreover, as protection of how the pubic views the judiciary as a whole is paramount, "if the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal." *Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343, 347 (5th Cir. 2000) *citing*, *In Re: Chevron*, 121 F.3d 163, 165 (5th Cir.1997).

The defendants wrongly urge that there must be an extrajudicial basis to support disqualification. To the contrary, while extrajudicial sources are, indeed, the more common basis for mandated recusal,

> [a] favorable or unfavorable *predisposition* can also deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment.

*Liteky v. U.S.*, 510 U.S. 540, 551 (1994) (emphasis added). As Zcom candidly asserted in its opening brief, it "makes no allegation of actual misconduct, actual bias or actual partiality on behalf of Judge Castel." Rather, it is the objective appearance of such partiality that requires recusal. Accordingly, even when "there is no evidence of actual bias we must consider whether a reasonable person might harbor doubts about the trial judge's impartiality." *Republic of Panama*, 217 F.3d at 347. Therefore, when, as here, "the risk of a perception of judicial bias or partiality is sufficiently great," the matter must be reassigned. *U.S. v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996).

---

[1] In *Chase Manhattan Bank* the Court reiterated the *Liljeberg* holding that "what matters is not the reality of bias or prejudice but its appearance." *Chase Manhattan Bank*, 343 F.3d at 127 *quoting*, *Liljeberg*, 486 U.S. at 860.

Notwithstanding Verizon's protestations to the contrary, "[t]he problem, however, is that regardless of his actual impartiality, a reasonable person might perceive bias to exist, and this cannot be permitted." *In re Sch. Asbestos Litig.*, 977 F.2d 764, 782 (3d Cir. 1992) *citing*, *In re Murchison*, 349 U.S. at 136. Critically, while it is true that commentary "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" (*Liteky*, 510 U.S. at 555) under the circumstances at bar "they will do so [because] they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (emphasis added). *See also Offutt v. U.S.*, 348 U.S. 11, 17-18 (1954).

## II. Judge Castel's "High Degree of Favoritism" Toward Verizon "Or Antagonism" Toward Zcom Resulted in Judge Castel Converting Zcom's Rule 6(b)(1)(A) Application into One Pursuant to Rule 6(b)(1)(B) While Converting Verizon's Woefully Untimely Rule 6(b)(1)(B) Application into One Pursuant to Rule 6(b)(1)(A)

While needlessly pointing fingers, and reinventing history by twisting the facts on their head, what Verizon failed to do is candidly address the appearance of favoritism that it enjoys. Such a failure constitutes an admission-by-waiver by Verizon. For instance, Verizon baldly urges that ZCom "flouted and repeatedly challenged the Court's various case management orders." Def. MOL pp. 1-2. The dictionary definition of "flout" ("to break or ignore (a law, rule, etc.) without hiding what you are doing or showing fear or shame") belies Verizon's claim.[2] Zcom flouted nothing. To the contrary, Zcom timely interposed its motion for reconsideration, timely communicated with counsel and Chambers regarding necessary enlargements of time to move to re-plead, and promptly complied with Chambers' directives. There is simply no evidence of Zcom "flouting" any judicial directive. On the contrary, however, Verizon itself brazenly flouted

[2] "Flout." *Merriam-Webster.com*. 2014. *http://www.merriam-webster.com/dictionary/flout* (7 Feb. 2014).

Rule 12(a)(4)(A) by virtue of the scheduling set forth in the dismissal order and were then over-rewarded by a "predisposed" Judge Castel, who treated an untimely Rule 6(b)(1)(B) application as if it were entitled to Rule 6(b)(1)(A) treatment. This appearance of partiality, to a reasonable yet independent observer steeped in the facts, would cause Judge Castel to appear partial to Verizon and against Zcom.[3]

An *ab initio* review of the record makes clear that Verizon admitted it was "guilty" of impermissible anticipatory declaratory litigation, it nevertheless, without a motion, received a transfer of Zcom's New York state court filed lawsuit - to the District of New Jersey - when "special circumstances" present barred application of the first filed doctrine. Then, after the matter was returned to New York, Verizon, not Zcom, was afforded the benefit of every inference on its Rule 12(b) motion (exactly the opposite of the applicable legal standard). Then, after Zcom made a timely Rule 6(b)(1)(A) request to counsel and then to the Court, for an enlargement of time to move to amend, such application was apparently disregarded by the Court for months, and Zcom was later falsely chided as if it was a Rule 6(b)(1)(B) request. Defaulting Verizon got treated better and with predisposition. This, predisposition and disparate treatment-trigger is proof positive of the necessary application of § 455(a). Such predisposed and disparate treatment, favoring Verizon and antagonistic to Zcom, evidences "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006) *quoting*, *Liteky*, 510 U.S. at 555.

---

[3]While Verizon now belatedly urges that Zcom's amended complaint is "'prolix,' 'vague,' 'convoluted,' and lacking in specificity" (Def. MOL p. 2) - this is a blatant attempt to further curry favor with Judge Castel. Had Verizon really believed that there was any technical infirmity with the complaint, or their ability to understand same, the would have long ago moved for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

In opposition, Verizon relies on *Holmes v. NBC/GE*, 925 F. Supp. 198 (S.D.N.Y. 1996); however, while recusal was denied in *Holmes*, that is because it was unwarranted. Rather, unlike here, in *Holmes* the Court was confronted only with adverse rulings. Thus, unlike here where Zcom's claim of predisposition and partiality is reasonably supported by the record, in *Holmes* the movant merely relied on "judicial rulings [ ] standing alone" with nothing else. *Id.* at 201.

## III. Zcom's Motion for Disqualification Was Timely Made after Obtaining "Knowledge of the Facts" Demonstrating Predisposition and Partiality, Warranting its Motion

While Verizon correctly notes that a motion for disqualification must be timely made upon the moving party learning of its grounds, they misleadingly urge that such was not precisely what Zcom did. To the contrary, notwithstanding Zcom's dissatisfaction with certain of Judge Castel's rulings, until the trigger of predisposition and disparate treatment, the aggregate of circumstances were not viewed by Zcom though the lens of § 455(a)! When it became apparent to Zcom that Judge Castel appeared predisposed and biased against Zcom and partial to Verizon, Zcom then moved for disqualification.

These circumstances are a far cry from those considered by the Second Circuit in *U.S. v. Yonkers Bd. of Educ.*, 946 F.2d 180 (2d Cir. 1991), relied upon by Verizon, where the party seeking recusal was untimely given that it had "several opportunities" prior to its motion to allege bias. *Id.* at 983. Similarly, while Verizon relies upon *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326 (2d Cir. 1987) to support their misguided claims of untimeliness, consistent with Zcom having acted entirely appropriately, in *Apple* the Court of Appeals noted that "a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Id.* at 333 (emphasis added).

Likewise, Verizon again misleadingly overstates the law, urging that "the Second Circuit has consistently held that recusal is never warranted" in matters involving adverse rulings." Def. MOL p. 1. Direct evidence of Verizon stretching its position too far is in the very case they rely on - *Schiff v. U.S.*, 919 F.2d 830 (2d Cir. 1990) - where the Court of Appeals held that standing alone, "[p]rior adverse rulings 'without more . . .'" do not mandate recusal. *Id.* at 834 *quoting*, *U.S. v. Wolfson*, 558 F.2d 59, 64 (2d Cir.1977) (emphasis added). Thus, *Schiff*, where the "prior adverse rulings" were by the same jurist but in a different, albeit related, matter, speaks to prior adverse orders in a vacuum. Here, there is "more" including the critical addition of predisposition and disparate treatment that triggered, and now requires, disqualification.

If the Court had treated Zcom and Verizon consistent with their status with regards to such applications "a reasonable person could not conclude that [the Court] ha[s] a 'deep-seated favoritism or antagonism' towards any party in this action." *Edwards v. Horn*, 2011 WL 569872, *2 (S.D.N.Y. Feb. 9, 2011) *quoting, Liteky*, 510 U.S. at 555. Here, however, unlike the scenario in *Edwards*, where the Court "similarly granted several of Plaintiff's applications" (*id.*), there was no similarity in Judge Castel's treatment of Zcom as compared to its adversaries, under like circumstances. Here, the treatment was widely disparate, to the prejudice of Zcom and the predisposed benefit of Verizon: timely Zcom became "untimely"; and, untimely Verizon became timely, without giving Zcom its Individual Practice 1(A) rights.

Zcom is aware that adverse rulings, in a vacuum, do not provide grounds for recusal. Accordingly, the "knowledge of the facts demonstrating the basis for such a claim" did not exist until - the trigger - of the "flurry" of Orders in November 2013 (*see, e.g.,* DE 93, 97, 100, 103-104) which a reasonable outside disinterested but knowledgeable observer could objectively view

as bias against Zcom and predisposed preferential treatment of Verizon. In circumstances such as those at bar "'[t]he question is whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality.'" *U.S. v. Apple Inc.*, — F.Supp.2d —, 2014 WL 171159 (S.D.N.Y. Jan. 16, 2014) *quoting*, *S.E.C. v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013). *See also U.S. v. Yousef*, 327 F.3d 56, 169 (2d Cir.2003);*U.S. v. Bayless*, 201 F.3d 116, 169 (2d Cir. 2000); *Diamondstone v. Macaluso*, 148 F.3d 113, 120–21 (2d Cir.1998); *U.S. v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992). Sadly, the answer is yes.

**IV. Zcom Is Not "Judge Shopping" - After "Embracing" Judge Castel**

Now, clearly recognizing that Zcom has been on the receiving end of apparent judicial bias, while they have enjoyed predisposed partiality, Verizon responds with a factitious allegation of "judge shopping" notwithstanding that Zcom "embraced" Judge Castel upon return. Thereafter, it was Judge Castel who hurt Zcom by bifurcating supplemental jurisdiction, without regard to the pleading standards in New York state courts where this case was commenced. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 215, n.4 (2d Cir. 2011). The recent exposure of Judge Castel's predisposition, apparent bias and disparate treatment now requires remand. As surely, bifurcation of supplemental jurisdiction already overruled efficiency.

While Verizon correctly notes that generally "parties are not allowed to sit back, see how things play out, and then seek a 'do-over'" (Def. MOL p. 1), it falsely urges that "Zcom waited ten months and for eight different Orders to issue before proceeding."*Id.* pp. 1, 4. Contrary to Verizon's urging, however, the facts bare out that Zcom never sought to steer assignment of the case (unlike Verizon's transfer to New Jersey). Rather, even on re-transfer from New Jersey, at

Judge Castel's request, Zcom candidly reported that the Southern District could, but did not have to, retain supplemental jurisdiction over its claims, all of which arise under New York state law. It was thus an unpleasant surprise when Judge Castel bifurcated supplemental jurisdiction by only keeping the defendants linked to Verizon, while remanding the other defendants (Sawnhey and the Bhumitras) back to New York County Supreme Court. Post-disparate treatment-trigger, the bifurcation appears as a partiality-gift to Verizon due to *Iqbal*, 556 U.S. 662 (2009).

Zcom did not envision that there was any bias until after Judge Castel's recent rulings showed apparent predisposition and disparity in treatment between Zcom and Verizon.[4] Thus, Zcom is properly responding to Judge Castel having "reveal[ed] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.

### V. Vacatur of Prior Orders and Remand to State Court Is Within the Scope of Relief Zcom Received Authority to Move for

Verizon erroneously claims that Zcom was not afforded permission to move for vacatur of prior orders and remand of its lawsuit. Def. MOL p. 14. To the contrary, by Zcom's pre-motion letter (DE 106), Zcom set forth the existence of Orders it now believes are tainted by the appearance of bias and partiality and specifically indicated that these were "prior Orders issued by Your Honor that ought be vacated" (*id.* at p. 5) which included, *inter alia*, the June 4, 2013 Order and the need to remand to state court. *Id.*. Judge Castel's Order granting leave for Zcom to make its motion directed that "Plaintiff may proceed with the motion described in its letter of December 31, 2013. . ." (DE 110). Accordingly, the relief sought in Zcom's instant motion is

[4] While Verizon makes significant "noise" over the "ten months" between the return of the case to Judge Castel, and Zcom's instant motion, its contentions are intentionally misguided. The first substantive determination was on June 4, 2013 and reconsideration of that determination was not denied until November 18, 2013. Thereafter, the first of the disparate orders were not released until late November 2013. Accordingly, Zcom timely raised its concerns by letter motions and then by requesting leave to make the instant formal motion.

well within the scope authorized by the Court.

Zcom seeks vacatur of the Orders specifically because they now, post-trigger, appear to be influenced by apparent predisposition and partiality. Accordingly, vacatur is proper as a means to best cure the taint. In response to such rationality, Verizon relies on *Canino v. Barclays Bank, PLC*, 1998 WL 7219 (S.D.N.Y. Jan. 7, 1998) for its overstated contention that recusal "'does not call into question the validity of' [the Court's] earlier rulings. . ." Def. MOL p. 14 *quoting*, *Canino* at *4. The context considered in Canino is wholly unrelated to that at bar here. In *Canino*, "Judge Cedarbaum recused herself from this action. . . because [her] husband's law firm had been retained by [defendant] on an unrelated matter." *Id.* at *3. There was no suggestion that there was an appearance of predisposition, bias or partiality by Judge Cedarbaum, or that any prior orders were impacted by such an appearance. The *Canino* Court unilaterally disqualified itself without a 28 U.S.C. § 455(a) motion and honored Holmes' "trembling hope."

## CONCLUSION

The triggering event of the flurry of recent Orders would cause a reasonable, independent observer, steeped in the facts, to revisit all prior Orders and objectively conclude that there was an appearance of predisposition and bias against Zcom, owned by an American Sikh with genuinely held religious beliefs, and partiality in favor of Verizon, requiring recusal, especially in what may be a non-jury case; thereby protecting the institutional interests of justice.

WHEREFORE, it is respectfully requested that Zcom's motion be granted in its entirety.

Respectfully submitted,
THE LAW FIRM OF RAVI BATRA, P.C.

Ravi Batra, Esq. (RB 4299)

ITC\020714RecusalReplyBrief